McCLURE v GENERAL MOTORS CORPORATION (ON
REHEARING)

KROLCZYK v WOLVERINE MOVING & STORAGE COMPANY

Docket No. 59625. Decided March 13, 1978, 402 Mich 392. Rehearing
granted 402 Mich 950q. Argued, with Docket No. 60750, Decem-
ber 5, 1978 (Calendar Nos. 1, 2).—Decided March 20, 1980.
Rehearing denied *post,* 1109.

  Carol McClure claimed workers' compensation for the death of
  her husband, Gary McClure, against his employer, General
  Motors Corporation, Fisher Body Division, Fleetwood Plant.
  The Workmen's Compensation Appeal Board denied the claim;
  it found that Gary McClure's death, which was the result of
  injuries caused when he was struck by an automobile while
  crossing the street from the Fleetwood Plant to a restaurant
  with three fellow workers during his lunch break, did not arise
  out of and in the course of his employment. The Court of
  Appeals, T. M. Burns, P.J., and Allen and D. F. Walsh, JJ.,
  denied leave to appeal (Docket No. 31354). Plaintiff appeals.

  Kimberly A. Krolczyk was injured one-half mile from her employ-
  er's place of business while she was on a one-hour lunch break,
  going by automobile to a restaurant with a fellow worker. The
  Workmen's Compensation Appeal Board denied plaintiff Krolc-
  zyk's claim for benefits against her employer, Wolverine Mov-
  ing and Storage Company, and its insurer, Transportation
  Insurance Company. The Court of Appeals, Danhof, C.J., and

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5-7, 9-15, 18, 19] 82 Am Jur 2d, Workmen's Compensation
    §§ 246, 272.
[2-5, 8, 9-19] 82 Am Jur 2d, Workmen's Compensation §§ 241-243.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 252, 269.
[6, 7] Am Jur 2d New Topic Service, No-Fault Insurance § 22.
    Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.
    Insured's receipt of or right to workmen's compensation benefits as
    affecting recovery under accident, hospital or medical expense
    policy. 40 ALR3d 1012.
[7] 20 Am Jur 2d, Courts § 183 *et seq.*
[16] 82 Am Jur 2d, Workmen's Compensation § 240.

Bronson and M. J. Kelly, JJ., denied leave to appeal (Docket No. 77-3394). Plaintiff appeals.

In opinions by Justice Ryan, joined by Chief Justice Coleman and Justice Fitzgerald, and by Justice Levin, the Supreme Court *held* that the automobile accident injuries suffered in these cases by employees who were off the premises during their lunch break did not arise "out of and in the course of" their employment, and are not compensable.

Justice Ryan could not subscribe to the combination of fact-finding and reasoning that it was a "circumstance" of the plaintiffs' employment that they were where they were when the injuries befell them, and the conclusion that lunchtime activities are also a "circumstance" of one's employment and "incidental to the employment", and that a *fortiori* injuries suffered during these activities are compensable as arising out of and in the course of that employment, without regard to whether the injury occurs on or off the premises where the work is done.

1. In a line of recent decisions the Court has expanded and broadened the sweep of workers' compensation coverage by judicial decision. To decide that the injuries in these cases are compensable would continue the dilution of the legislative requirement that, to be compensable, an employee's injury must be suffered "out of and in the course of his employment" by first equating "circumstance of employment" with "out of and in the course of his employment" and finally completely substituting the newly created judicial standard for the long-standing legislative norm.

2. The significant inquiry is not whether the employees were injured while carrying out duties absolutely required by their employment contracts nor whether the injuries occurred as a "circumstance" of the employment relationship, but whether the injuries arose "out of and in the course of" employment. The Court is asked to extend the scope of workers' compensation coverage to the time of the worker's day historically and intentionally allocated for an interruption of and withdrawal from the service of the employer, traditionally understood to be the mealtime, to any activity, whether performed "out of and in the course of his employment" or not, in which the employee may be engaged during that period, and to any place in which the employee may be during that period.

3. The dissent claims merely to be following the lead of previous cases because it is still convinced of their soundness. The cases relied upon, properly read, stand for the proposition that when on a given day an employee, in obedience to an

employer's direction to deviate from the regular, normal working schedule and to enter upon an interrupted and irregular schedule, including a mandatory period of "swing run" inactivity, is injured, his injuries are suffered "out of and in the course of his employment". The significance of the phrase "circumstance of employment" is in the context of an order of the employer to depart from a normal work schedule of uninterrupted service. Neither of the present cases involves a direction by the employer to deviate from the worker's regular normal working schedule.

4. It may indeed have been a "circumstance" of McClure's employment that he was in the middle of Fort Street, and of Krolczyk's that she was driving a car a half-mile away from work during the lunch period, but the Legislature has not yet seen fit to provide compensation for injuries suffered by workers during off-premises lunch-hour activity of a purely personal character. The Court is not constitutionally free to do so in its place. The test for entitlement to workers' compensation benefits remains "out of and in the course of" employment. The Worker's Compensation Appeal Board found, with conclusively binding effect, that the off-premises lunchtime automobile accidents which resulted in McClure's death and Krolczyk's injuries did not arise out of and in the course of their employment, and thus that the injuries are not compensable.

Justice Levin would hold that:

1. Injuries sustained in off-premises motor vehicle accidents during the normal lunch period do not arise "out of and in the course of" the employment. An award of compensation, although consistent with the rationales of earlier lunchtime cases, would be an extension of prior law. When the no-fault insurance act was enacted, employers were not generally liable for off-premises lunchtime injuries and thus, under no-fault, the motor vehicle insurer of the worker or a family member would ordinarily bear the entire cost of motor vehicle injuries during the lunch period. An extension of workers' compensation coverage to lunchtime automobile injuries would allow the motor vehicle insurer a deduction for compensation benefits payable and thus work a reallocation of the cost of reparations probably unforeseen by the Legislature.

2. Krolczyk's injuries were sustained after the effective date of no-fault. Although McClure's injury was before the effective date, a different rule should not be applied, because the remaining issue is whether an employee is entitled to workers' compensation for off-premises lunchtime injuries *not* resulting from a motor vehicle accident, and McClure's injury was sustained

in a motor vehicle accident. To grant or deny benefits in
McClure's case would be to set precedent in a context not likely
to recur which might govern off-premises lunchtime injury
cases generally. Such a difficult issue should be resolved only in
a case presenting the precise question. A separate decision here
would color the disposition of the issue left unresolved. The
Court being one of discretionary jurisdiction, it should not
decide the question now. The Legislature may speak before the
issue comes before the Court. It has provided that kind of
guidance once before, when the "on-premises" amendment was
passed.

3. Reliance on the case where there was an irregular work
schedule is misplaced. It was not really a lunchtime case: the
employee was injured during a paid five-hour lull in the work,
traceable to an irregular work schedule designed to suit his
employer's needs. The Court which decided the case seems to
have assumed that because he was injured en route to the work-
place after eating lunch, the "going and coming" rule, which
denies compensation for injuries sustained in off-premises
travel to and from the workplace, would have been applicable
but for the irregularity of his schedule. McClure and Krolczyk
were injured during their normal unpaid lunch periods and
therefore an exception to the going-and-coming rule for an
irregular work schedule has no application in the circum-
stances of these cases. The earlier case did not, however, define
the outer limits of compensability, and holding lunchtime
injuries compensable generally or on these facts might be
justified on other grounds.

4. The statement that it is an extension of prior law to award
benefits for injuries incurred during the lunch period while no
services required by the contract of employment are being
performed is not supportable. The principle that lunchtime is
part of the workday was recognized in 1917, and is the law
today. In 1917 the Court explicitly recognized that there is
coverage although the employee is performing no services for
the employer at the time of injury. To limit coverage to injuries
incurred during performance of work required by the contract
or of apparent benefit to the employer would be to ignore
numerous holdings of the Court, and to confuse the statutory
term "course of employment" with the concept of scope of
employment. It can be said that lunchtime injuries, at least
when they occur on the premises, are compensable so long as
the employer-employee nexus is not broken. That nexus re-
mains intact so long as the employee's conduct is within the
normal sphere of permitted and contemplated employee activ-

ity. Neither McClure nor Krolczyk can be charged with departing from the normal sphere of permitted and contemplated employee activity and therefore the nexus was not broken. The issue then is whether coverage that would ordinarily extend during the lunch period is lost when an employee leaves the premises.

5. It is difficult to articulate a principled basis for a premises cutoff. Arguably, if lunch on the premises is in the "course of employment", so too is lunch off the premises. A premises limitation is not inherent in the concept of "nexus" nor need the cases be read as limited to on-premises lunchtime injuries. The Court has not, however, applied the "nexus" test to off-premises lunchtime injuries, nor has it held the going-and-coming rule inapplicable to lunchtime travel. Thus, extension to off-premises injuries is not necessarily compelled. Prior cases might be read as imposing higher standards for qualifying for compensation where the injury occurs off the premises. Then it could be argued that there are two lines of cases which together mean that lunchtime injuries on the premises are covered so long as the nexus is unbroken, but lunchtime injuries off the premises are covered only if service for the employer is being performed, or some other exception to the going-and-coming rule applies. This leads back to the starting point: can a continued distinction between on-premises and off-premises injuries be justified?

6. The statutory presumption that on-premises injuries are compensable carries no negative implication that off-premises injuries are not. Cases before the enactment of the on-premises amendment independently developed the nexus principle, and while cases after the amendment relied on the amendment, they did not thereby reject the nexus principle. It would therefore not be inappropriate to extend principles developed independently of the amendment in the construction of "out of and in the course of" when it is concluded that those principles cannot be logically or reasonably limited to on-premises injuries. On the other hand, a line must be drawn at some point. The premises line might be the appropriate cutoff. It has the practical advantage that administratively and judicially it is relatively easy to apply. A decision either for or against coverage can be justified.

Affirmed.

Justice Kavanagh, joined by Justices Williams and Moody, dissented. He would hold that the injuries arose out of and in the course of the employment.

1. The defendants argue that the contracts of employment

did not require, directly or indirectly, that the employees be where they were at the time of the injuries, and that therefore the employees' injuries did not arise in the course of their employment. The significant inquiry in these cases is not whether the employees were injured while carrying out duties absolutely required by their employment contracts, but whether the injuries occurred as a circumstance of the employment relationship.

2. The employees in these cases were permitted to leave the premises of their employment for their lunch. Indeed, plaintiff Krolczyk was encouraged to do so because the defendant Wolverine Moving and Storage Company received the benefits accruing from having a refreshed employee returning for the afternoon's work. The employees' freedom to do as they wished during their lunchtime was limited by the requirements of their employment because an employee who interrupts his work and leaves his place of employment for lunch knows that he has not completed his workday and that he will be returning as soon as his lunch is over. His time is not really his own. Midday meal periods have long been recognized as an integral part of the work routine.

3. It was a circumstance of their employment that McClure and Krolczyk were where they were when the injuries befell them. During the workday when an employee is injured in the course of an activity which is incidental to the employment the injuries have arisen out of and in the course of that employment. This is true whether the injury arises on the premises or off the premises. The lunch breaks in both cases were incidental to the employment. This holding, however, does not impose upon the employer the burden of guaranteeing the general health and well-being of the employee. Recognizing that these injuries arose out of and in the course of the employment does not require abandonment of the general rule that injuries sustained while going to or coming from work do not arise out of and in the course of one's employment, except as modified by statute.

Justice Moody, joined by Justice Williams, wrote further that he agreed that both injuries arose out of and in the course of employment.

1. The law does not require a proximately causal connection between the employment and the injury. To be compensable, the injury suffered must have occurred in the course of employment, which may not be equated with scope of employment. The concept of course of employment was formulated to encom-

pass activity falling within the normal sphere of the employee's activity associated with the work routine. An employee injured during the lunch period, while not actually performing the work of his employer, may be engaged in an activity in the course of employment.

2. The activities of the employees in these cases, at the time of injury, fell within the course of employment. Lunch periods are now customarily considered an integral part of the work routine. The employment agreements of both employees provided that employees be permitted, during the course of their working day, a certain time for lunch. The duration of each lunch period was definite and reasonably brief. Both injuries were suffered during the designated lunchtime in places where it was reasonable for the employees to be during lunch. The employers either acquiesced in or actually encouraged the employees' practice of departing from the premises. In leaving the place of work, neither employee was disobeying any reasonable employer's rule or instruction.

3. Allowing workers' compensation to be paid only where lunchtime injuries occur on the employer's premises creates a distinction without meaningful difference. An employee who crosses the threshold of the premises and is injured on his way to lunch is in no real sense less in the course of his employment than one who is injured en route to the company cafeteria. Application of this rule would be certainly questionable where the facts show that no adequate lunch facilities have been provided on the premises.

4. At the time of injury both employees were traveling to a place for the purpose of obtaining lunch, an activity reasonably related to the purpose for which the lunch period was created. Their conduct was reasonable and within the normal sphere of permitted and contemplated activity of employees. The employment nexus remained intact. Accordingly, the injuries suffered by each employee arose out of and in the course of employment.

*McClure v General Motors Corp*, 402 Mich 392; 262 NW2d 829 (1978), overruled.

### Decision of the Court

1. Workmen's Compensation — Course of Employment — Lunch Hour — Automobile Accidents.

Automobile accident injuries suffered by employees who were off the premises during their lunch break did not arise "out of and in the course of" their employment, and are not compensable

under the Worker's Disability Compensation Act (MCL 418.301; MSA 17.237[301]).

OPINION BY RYAN, J.

2. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR.

*The significant inquiry in a case where an employee is injured while away from his place of employment is not whether the employee was injured while carrying out duties absolutely required by the employment contract or whether the injuries occurred as a circumstance of the employment relationship, but whether the injury arose "out of and in the course of his employment" (MCL 418.301; MSA 17.237[301]).*

3. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — INCIDENTAL ACTIVITY.

*An injury to an employee during the workday in the course of an activity which is incidental to the employment is suffered "out of and in the course of his employment" where, on a given day, the employee, in obedience to the employer's direction to deviate from the regular, normal working schedule and to enter upon an interrupted and irregular schedule, including a mandatory period of "swing run" inactivity, is injured (MCL 418.301; MSA 17.237[301]).*

4. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — CIRCUMSTANCE OF EMPLOYMENT.

*The test for entitlement to workers' compensation benefits is whether the injury arose "out of and in the course of" employment, not whether the injury occurred as a result of a "circumstance of employment" (Const 1963, art 3, § 2; MCL 418.301; MSA 17.237[301]).*

OPINION BY LEVIN, J.

5. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR — AUTOMOBILE ACCIDENTS.

*Injuries sustained in off-premises motor vehicle accidents during the normal lunch period in circumstances in which no previously recognized exception to the going-and-coming rule is applicable do not arise "out of and in the course of" the employment (MCL 418.301; MSA 17.237[301]).*

6. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR — AUTOMOBILE ACCIDENTS — NO-FAULT INSURANCE — REDUCTION OF BENEFITS.

*An extension, by judicial decision, of workers' compensation*

benefits to lunchtime automobile injuries would, because of the set-off provision of the no-fault insurance act, allow the motor vehicle insurer a deduction for workers' compensation benefits payable and thus work a reallocation, probably unforeseen by the Legislature, of the cost of insurance reparations for such accidents from the no-fault system to the workers' compensation system; the Court should not disturb the cost allocation extant when the no-fault act was enacted (MCL 418.301, 500.3109; MSA 17.237[301], 24.13109).

7. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR — AUTOMOBILE ACCIDENTS — DISCRETIONARY JURISDICTION.

To grant or deny, by an extension of the case law, workers' compensation benefits to a worker who suffered injuries before the enactment of the no-fault insurance act in a lunchtime automobile accident while he was off the premises of his employer would be to set precedent in a context not likely to recur, which might govern the disposition in such cases generally; the Supreme Court, being a Court of discretionary jurisdiction, should not speak decisionally on this question at a time when legislative guidance in the form of a specific rule applicable to a recurring class of cases is appropriate (MCL 418.301, 500.3101 et seq.; MSA 17.237[301], 24.13101 et seq.).

8. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT.

There may be workers' compensation coverage although the employee is performing no services for the employer at the time of the injury; to limit workers' compensation coverage to injuries incurred during performance of work required by the contract of employment or of apparent benefit to the employer would ignore numerous holdings of the Supreme Court, and confuses the statutory term "course of employment" with the concept of "scope of employment" (MCL 418.301; MSA 17.237[301]).

9. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR.

Lunchtime injuries, at least when they occur on the employer's premises, are compensable under the Worker's Disability Compensation Act so long as the employer-employee "nexus" is not broken; the nexus remains intact so long as the employee's conduct is within the normal sphere of permitted and contemplated employee activity (MCL 418.301; MSA 17.237[301]).

10. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR — EMPLOYER'S PREMISES.

*The statutory presumption that on-premises injuries are compensable under the Worker's Disability Compensation Act carries no negative implication that off-premises injuries are not; it would not be inappropriate, therefore, to extend principles developed independently of the amendment which created the statutory presumption when or if it is concluded that those principles cannot be logically or reasonably limited to on-premises injuries, because the amendment does not limit the Court's power to do so (MCL 418.301; MSA 17.237[301]).*

DISSENTING OPINION BY KAVANAGH, J.

11. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — LUNCH HOUR.

*The significant inquiry in a case where an employee is injured while away from his place of employment during his lunch hour is not whether the employee was injured while carrying out duties absolutely required by his employment contract but whether the injury occurred as a circumstance of the employment relationship (MCL 418.301; MSA 17.237[301]).*

12. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — INCIDENTAL ACTIVITY — LUNCH HOUR.

*An employee's freedom to do as he wishes during lunchtime is limited by the requirements of his employment because an employee who interrupts his work and leaves his place of employment for lunch knows that he has not completed his workday and that he will be returning as soon as his lunch is over and his time is not really his own; midday meals have long been recognized as an integral part of the work routine (MCL 418.301; MSA 17.237[301]).*

13. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — INCIDENTAL ACTIVITY.

*It was a circumstance of his employment that an employee was injured while going to a restaurant during his lunch break where he was permitted to leave the premises of his employment for lunch (MCL 418.301; MSA 17.237[301]).*

14. WORKMEN'S COMPENSATION — COURSE OF EMPLOYMENT — INCIDENTAL ACTIVITY.

*An injury to an employee during the workday in the course of an activity which is incidental to the employment has arisen out of and in the course of that employment whether the injury*

occurred on or off the premises of employment (MCL 418.301; MSA 17.237[301]).

15. Workmen's Compensation — Course of Employment — Incidental Activity.

Recognizing that an injury during an employee's lunch hour arose out of and in the course of his employment does not impose upon the employer the burden of guaranteeing the general health and well-being of the employee or abandonment of the general rule that injuries sustained while going to or coming from work are not in the course of one's employment, except as modified by statute (MCL 418.301[2]; MSA 17.237[301][2]).

Dissenting Opinion by Blair Moody, Jr., J.

16. Workmen's Compensation — Course of Employment — Causation.

The establishment of a proximately causal connection between employment and injury is not required to entitle a claimant to workers' compensation; if the employment is the occasion of the injury, even though not the proximate cause, workers' compensation benefits should be paid (MCL 418.301; MSA 17.237[301]).

17. Workmen's Compensation — Course of Employment — Scope of Employment — Words and Phrases.

An injury must have occurred in the course of employment to be compensable under the Worker's Disability Compensation Act; course of employment may not be equated with scope of employment, but includes activity falling within the normal sphere of the employee's activity associated with the work routine (MCL 418.301; MSA 17.237[301]).

18. Workmen's Compensation — Course of Employment — Lunch Hour.

An employee injured during the lunch period, while not actually performing the work of his employer, may be engaged in activity in the course of employment (MCL 418.301; MSA 17.237[301]).

19. Workmen's Compensation — Course of Employment — Lunch Hour.

Injuries suffered by two employees during a lunch period arose out of and in the course of their employments where their employment agreements provided that they were permitted a certain time for lunch, the duration of each lunch period was

*definite and reasonably brief, both injuries were suffered during the designated lunchtime in places where it was reasonable for the employees to be during lunch, the employers either acquiesced in or actually encouraged the employees' practice of departing from the premises to obtain refreshment elsewhere, neither employee was disobeying any reasonable employer's rule or instruction, and at the time of injury both employees were traveling to a place for the purpose of obtaining lunch, an activity reasonably related to the purpose for which the lunch period was created (MCL 418.301; MSA 17.237[301]).*

*Richard P. Riordan* for plaintiff McClure.

*Marston & Marston, P.C.,* for plaintiff Krolczyk.

*Willard W. Wallace, Francis S. Jaworski,* and *A. Ronald Sirna, Jr. (Otis M. Smith,* General Counsel, of counsel), for defendant General Motors Corporation.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C. (William J. Heaphy,* of counsel), for defendants Wolverine Moving and Storage Company and Transportation Insurance Company.

RYAN, J. We are confronted with the same issue in these cases which divided us in *McClure v General Motors Corp,* 402 Mich 392; 262 NW2d 829 (1978), *viz.:* whether in the circumstances extant in each case, auto accident injuries[1] suffered by workers off the premises where their work was to be performed, and during a lunchtime break, are compensable under the Worker's Disability Compensation Act[2] as occurring out of and in the course of their employment.

The facts in both cases are accurately set forth in the opinions of our colleagues and need no restatement here.

_____

[1] Mr. McClure's injuries ultimately proved fatal.
[2] MCL 418.301; MSA 17.237(301).

Following the earlier *McClure* opinion, three of our brothers, with citation to *Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966), begin with the finding of fact that it was a "circumstance" of plaintiffs' respective employments that they "were where they were when the injuries befell them". From that premise it is further concluded that lunchtime activities are also a "circumstance" of one's employment and "incidental to the employment", and that *a fortiori* injuries suffered during those activities are compensable as arising out of and in the course of that employment, regardless of whether the injury occurs on or off the premises where the work is to be done.[3]

We cannot subscribe to that combination of appellate fact-finding and reasoning.

Our brothers, writing for reversal of the Worker's Compensation Appeal Board decision and reaffirmance of *McClure* I, would add this case to a line of recent decisions in which this Court has expanded and broadened the sweep of workers' compensation coverage by judicial decision.[4]

---

[3] As is indicated in his separate opinion for affirmance on other grounds, Justice Levin is no longer of that view, at least with respect to the facts of these cases.

[4] *West v Barton-Malow Co,* 394 Mich 334; 230 NW2d 545 (1975) (To qualify for dependent's death benefits, woman married to one man is nevertheless declared a dependent member of another man's family); *Martin v Ford Motor Co,* 401 Mich 607; 258 NW2d 465 (1977) (Court reverses WCAB finding of fact that plaintiff failed to prove work-related aggravation of loss of use of legs and arm); *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978) (Claimant's willfully false representation to employer that he had not previously been treated for back trouble is held to be no bar to recovery of benefits for back injury but would bar an occupational disease claim); *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978) (Claimant is entitled to recover benefits for physical or mental injury without showing any actual nexus between the injury and his employment, as long as the claimant "honestly perceives" the existence of a nexus); *Redfern v Sparks-Withington Co,* 403 Mich 63; 268 NW2d 28 (1978) (Worker entitled to benefits for "insanity" if shown to have "severe social dysfunction" and for "imbecility" if shown to have "severe cognitive dysfunction",

To follow that course here would see this Court effect more worker compensation law "reform" of its own, unchecked by burdensome legislative committee hearings, union and management testimonial expertise, cost analyses, consideration of the effect upon related social legislation and the risk of rejection following bicameral debate or of executive veto.

We decline to continue the ongoing dilution of the legislative requirement that, as a condition of compensability, an employee's injury must be suffered "out of and in the course of his employment" by first equating "circumstance of employment" with "out of and in the course of employment", and finally substituting the newly created judicial standard for the longstanding legislative norm. We cannot agree with our colleagues that:

"The significant inquiry in the instant cases is not whether the employees were injured while carrying out duties absolutely required by their employment contracts, but whether the injuries occurred as a circumstance of the employment relationship."

We are of the view, of course, that neither of the stated alternatives is the "significant inquiry"; that the significant inquiry is whether the injuries

notwithstanding expert medical disagreement with such definitions and despite no loss of earning capacity); *Betts v Ann Arbor Public Schools,* 403 Mich 507; 271 NW2d 498 (1978) (Fourth-year university education-degree candidate performing university required "student teaching" at one of defendant's schools, despite having no employment contract and being paid no salary, wages or remuneration of any kind, is an employee for purposes of entitlement to benefits); *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 411 (1979) (WCAB finding of fact that claimant failed to sustain burden to prove that heart damage was work-related is set aside and case remanded to WCAB "for further proceedings" because WCAB gave "preclusive effect" to testimony of medical expert and failed to "treat" facts developed in lay testimony).

arose "out of and in the course of his employ-
ment".

By this case, the Court is asked to extend the
scope of workers' compensation coverage in three
inter-related ways:

1. To that *time segment* of the worker's day
historically and intentionally allocated to the em-
ployee for an interruption of and withdrawal from
the service of the employer, traditionally under-
stood to be mealtime,

2. To *any activity* whether performed "out of
and in the course of his employment", or not, in
which the employee may be engaged during that
period, and

3. To *any place* in which the employee may be
during that period.

Apparently unwilling to declare this requested
extension of workers' compensation coverage to be
the new law it is, three of our brothers claim
merely to be following the lead of *Howard v De-
troit, supra,* stating that they "are still convinced
of the soundness of [its] rationale".

In *Howard,* a municipal bus driver was required
on the day in question to work a split shift. He
drove his bus from 7:05 a.m. until 8:45 a.m., and
was scheduled to drive again from 1:25 p.m. to 7:54
p.m. During the five-hour interval for which he
was paid his hourly wages, and as a consequence
of which he was paid an overtime rate at the end
of his day, the driver left the terminal, conducted
some personal business, went home for lunch and,
while returning to the terminal in his car, was
injured in an auto accident. With heavy reliance
upon the earlier case of *Bisdom v Kerbrat,* 251
Mich 316; 232 NW 408 (1930), a divided Court
reversed an appeal board denial of benefits, stat-
ing:

"In *[Bisdom v Kerbrat]*, plaintiff was en route to his dinner, rather than returning thereafter, but the special circumstance was created by a *specific requirement of his employment on that day.* It resulted from a direct order from his employer and had no application to any other day. *The essential point abides. The circumstance was a deviation from his regular normal working schedule.* It was for his employer's benefit and was an incident of his contract of employment. Thus it was that a circumstance of his employment placed him where he was at the time of his accidental injury. So too, it was a circumstance of his employment that placed plaintiff in this case where he was when he was accidentally injured.

"In this case, also, plaintiff had not finished his day's work. We agree with the dissenting opinion [of the WCAB] that *the facts presented in* Bisdom *are sufficiently analogous to warrant its application here."* (Emphasis added.)

*Bisdom* and *Howard,* properly read, are cases standing for the proposition that when on a given day an employee, in obedience to the employer's direction to deviate from "the regular normal working schedule" and to enter upon an interrupted and irregular schedule, including a mandatory period of "swing run" inactivity, is injured, his injuries are suffered "out of and in the course of his employment".

The significance of the *Howard* Court's statement that "it was a circumstance of his employment that placed plaintiff in this case where he was when accidentally injured" is in the context of employer-ordered departure from a normal work schedule of uninterrupted service.

The facts in *Bisdom* and *Howard,* which the *Howard* Court said were "sufficiently analogous to warrant" the same result, are totally distinguishable from those in *McClure* and *Krolczyk.* In neither of the cases before us did the lunchtime

activities involve an employer-directed deviation from the worker's regular normal working schedules.

Ignoring the difference, our colleagues lift the "circumstance of his employment" language from the "deviation from his regular normal working schedule" context of *Howard* and *Bisdom* and apply it to the off-premises injuries suffered by Mr. McClure and Ms. Krolczyk during their regularly scheduled normal workday lunch hour break to create a "circumstance" by which there is entitlement to benefits.

We reject that approach because it ignores the legislative requirement that, to be compensable, the injury must occur "out of and in the course of" the worker's employment.

It may indeed have been a "circumstance" of Mr. McClure's employment that he was in the middle of Fort Street, and of Ms. Krolczyk's that she was driving a car a half-mile away from work during the lunch period, but the Legislature has not yet seen fit to provide compensation for injuries suffered by workers during off-premises lunch-hour activity of a purely personal character. Perhaps it ought to have done so long ago—but it has not, and we are not constitutionally free to do so in its place. Like it or not, the test for entitlement to compensation benefits remains "out of and in the course of" employment.

The rationale employed by the New Jersey court in *Wyatt v Metropolitan Maintenance Co,* 74 NJ 167; 376 A2d 1222 (1977), and *Hornyak v The Great Atlantic & Pacific Tea Co,* 63 NJ 99; 305 A2d 65 (1973), upon which our colleagues rely, is even less persuasive than what we perceive to be the misapplication of the "circumstance of employment" language of *Howard.* We share the concern

expressed by Professor Larson[5] in his critique of the *Hornyak* case and adopt his argument as having signal applicability to today's decision:

"Let us assume the case of an ordinary office worker in a downtown Newark office building, with an hour off for lunch, during normal daytime work. The worker sets out on foot, and a half-hour later is found somewhere in Newark, beaten and robbed in an amusement arcade, a pool room, a porno movie, or a massage parlor. Has the New Jersey court prepared itself *now* for the prospect of explaining how this was 'reasonably incidental' to the employment? If not, what stands between it and the necessity of calling these cases compensable? Will it resort to a case-by-case attempt to label some such excursions deviations? On what principle? In its opinion it quotes a Hawaii case, *Dependents of Pacheo v Orchids of Hawaii* [54 Hawaii 66; 502 P2d 1399 (1972)]. 'An employer may derive substantial benefits from an employee who is allowed time away from the job to accomplish pressing personal business.' Thus, if an employee on the way to lunch deviated a block to buy a record, the New Jersey court would no doubt find this deviation insubstantial. Where is the line between this and the poolroom? Both relate to recreational activities of the employee. Moreover, all this presupposes that one knows (as in *Hornyak*) where the employee was going at the time of injury. In downtown Newark there are restaurants in all directions. If the employee is mugged, run over, or hit by a falling brick anywhere in town during lunch hour, is it to be presumed that he was on his way to lunch, or on a permissible deviation, provided only the incident occurred during that hour?

"Now suppose the case of a young female automobile assembly-line worker who never eats lunch. She uses the lunch hour to run personal errands, visit friends, and window-shop. She is injured when a bookcase falls on her while she is browsing in a bookstore. Is this to

5 1 Larson, Workmen's Compensation Law, § 15.12, pp 4-13, 4-14.

be considered reasonably incidental to automobile man-
ufacture?

* * *

"Millions of workers go home for lunch. Presumably
this trip will also be covered, along with an incalculable
variety of deviations along the way. Where will cover-
age stop? At the employee's premises? At his front
steps? Inside his door? Or perhaps he will be covered
inside his own house for the entire period, while eating,
and perhaps while doing little incidental things around
the house. After all, how can one distinguish downtown
deviations and home deviations? Perhaps he tries to fix
a light switch, or chops some wood, or cleans his shot-
gun, or merely falls down the basement stairs with an
armload of canning jars. Or perhaps he gets food poi-
soning from his wife's cooking. If this is not to be called
'reasonably incidental' to his employment, someone had
better think out in advance where the stopping point is,
and what [its] rationale is."

As the Worker's Compensation Appeal Board
found with conclusively binding effect, the off-
premises lunchtime auto accidents which resulted
in Mr. McClure's death and Ms. Krolczyk's inju-
ries did not arise out of and in the course of their
employments and thus, as the Court of Appeals
has held, are not in law compensable.

We affirm.

COLEMAN, C.J., and FITZGERALD, J., concurred
with RYAN, J.

LEVIN, J. *(for affirmance).* The plaintiffs sought
worker's compensation benefits for injuries sus-
tained in motor vehicle accidents. The accidents
occurred off the employers' premises and at lunch-
time.

The issue is whether the injuries arose "out of
and in the course of" the employment within the

meaning of the Worker's Disability Compensation Act.[1]

I would hold:

(1) Injuries sustained in off-premises motor vehicle accidents during the normal lunch period do not arise "out of and in the course of" the employment. An award of compensation, although consistent with the rationales of earlier lunchtime cases, would be an extension of prior case law. Under the case law extant when the no-fault insurance act was enacted, employers were not generally liable for off-premises lunchtime injuries and thus, under that act, the motor vehicle insurer of the worker or a family member would ordinarily bear the entire cost of motor vehicle injuries during the lunch period. An extension today of worker's compensation coverage to lunchtime automobile injuries would, because of § 3109 of the no-fault act,[2] allow the motor vehicle carrier a deduction for worker's compensation benefits payable and thus work a reallocation, probably unforeseen by the Legislature, of the cost of insurance reparations for such accidents from the no-fault system to the worker's compensation system. This Court should not disturb the cost allocation extant when the no-fault act was enacted.

(2) Krolczyk's injuries were sustained after the effective date of the no-fault act. Although McClure's injuries were sustained before that date, a different rule should not be applied in his case. In light of the disposition stated in (1) above, the only

---

[1] Worker's Disability Compensation Act of 1969, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

Section 301 of the act, MCL 418.301; MSA 17.237(301) provides in part:

"(1) An employee, who receives a personal injury arising out of and in the course of his employment * * * shall be paid compensation * * *."

[2] MCL 500.3109; MSA 24.13109.

remaining issue of jurisprudential significance is whether an employee is entitled to worker's compensation for off-premises lunchtime injuries *not* resulting from a motor vehicle accident. *McClure* does not present that precise issue because his injuries were sustained in a motor vehicle accident. To grant or deny benefits in a pre-no-fault motor vehicle accident case would be to set precedent, in a context not likely to recur, which might govern disposition in off-premises lunchtime injury cases generally. This being a Court of discretionary jurisdiction, we should not speak decisionally on this question at this time.

I

Gary McClure was employed at General Motors' Fleetwood Plant on Fort Street. Although a cafeteria serving hot food was maintained on the premises, employees were permitted to leave during their 30-minute unpaid meal period. There was testimony that employees who chose to stay often had to rush their eating because of long cafeteria lines. Located across Fort Street from the plant was the Fleetwood Inn, which enjoyed the lunchtime patronage of approximately 50 to 100 Fleetwood Plant employees each day.

On April 14, 1973, while crossing Fort Street on his way to the Fleetwood Inn with three co-workers, McClure was hit by an automobile and sustained injuries which resulted in his death on November 8, 1973.

Carol McClure, his widow, was awarded compensation by the administrative law judge. The Workmen's Compensation Appeal Board reversed. The Court of Appeals denied leave to appeal. On application for leave to appeal, this Court reversed the WCAB, holding that the injuries arose out of and

in the course of the employment because it was a "circumstance" or "incident" of McClure's employment that placed him where he was when injured.[3] We granted rehearing.

Kimberly Ann Krolczyk was a salaried employee of Wolverine Moving and Storage Company. A refrigerator and vending machines containing candy and soft drinks were located on the premises. There was no cafeteria. The WCAB found that employees were encouraged to leave their desks during the one-hour lunch period. Employees testified that they were told that one hour was allotted for lunch so that they could leave the premises and return refreshed for the afternoon's work. Krolczyk and all but a handful of her co-workers customarily left the premises for lunch.

On February 1, 1974, during her lunch hour, Krolczyk was injured on the way to a restaurant when the car in which she and a co-worker were driving struck a rut and went out of control approximately one-half mile from her work place.

The WCAB affirmed the referee's denial of benefits and the Court of Appeals denied leave to appeal. We granted leave to appeal, ordering the case argued and submitted with *McClure* on rehearing.

## II

This Court's prior decision in *McClure,* simultaneously granting leave to appeal and reversing the WCAB without further briefing or argument, implied that the question presented could be readily answered. On the application for rehearing, it appeared that the issues were more complex than

---

[3] *McClure v General Motors Corp,* 402 Mich 392; 262 NW2d 829 (1978).

we had at first believed. At this time, it is appropriate to identify the complexities that initially escaped our attention.

## A

I agree with Justice Ryan that our reliance on *Howard v Detroit*[4] in our prior decision in *McClure* was mistaken. *Howard* was not really a lunchtime case. Tommie Howard was injured during a paid five-hour lull in the work, traceable to an irregular work schedule designed to suit his employer's needs. The *Howard* Court seems to have assumed that because Howard was injured en route to the work place (after eating lunch), the "going-and-coming" rule, which denies compensation for injuries sustained in off-premises travel to and from the work place, would have been applicable but for the irregularity of his schedule.[5]

McClure and Krolczyk were injured during their normal unpaid lunch periods, and therefore the exception to the going-and-coming rule recognized in *Howard* for an irregular work schedule has no application in the circumstances of their cases.

*Howard* did not, however, define the outer limits of compensability, and the result reached by Justices Kavanagh and Moody might be justified on

---

[4] *Howard v Detroit,* 377 Mich 102; 139 NW2d 677 (1966).

[5] "It is the difference between plaintiff's conduct pattern as affected by his work schedule on 'regular run days' and 'swing run days' that gives rise to this appeal."

"[A] condition of his employment required plaintiff to begin his work day at 7 a.m., work till 8:45 a.m., interrupt his work for 5 hours and resume work again at 1:28 p.m. This fact of his employment contract subjected plaintiff to a situation entirely different in nature from that to which the 'regular run' drivers on the same run * * * were subjected. For this reason we believe the majority opinion [of the appeal board] erred in the ultimate conclusion that plaintiff was 'merely on his way to [or from] work.' This is precisely what plaintiff was not doing." *Id.,* 107, 109-110.

other grounds. Based on doctrines developed in other cases, lunchtime injuries might be held to be compensable generally or on the facts of these cases, or a separate exception to the going-and-coming rule might be recognized for lunchtime travel generally or on these facts.

B

Justice RYAN's statements that it is an extension of prior law to award benefits for injuries incurred during the lunch period and while no services required by the contract of employment are being performed is not supportable.

Lunchtime coverage is neither novel nor remarkable.[6] The principle that lunchtime is part of the workday was recognized by this Court in *Haller v Lansing*, decided in 1917,[7] and is the law today.[8]

The *Haller* Court explicitly recognized that there may be coverage although the employee is performing no services for the employer at the time of the injury.[9] To limit worker's compensation coverage to injuries incurred during performance

---

[6] "Injuries occurring *on the premises* during a regular lunch hour arise in the course of employment, even though the interval is technically outside the regular hours of employment in the sense that the worker receives no pay for that time and is in no degree under the control of the employer, being free to go where he pleases." 1A Larson, Workmen's Compensation Law, § 21.21(a), p 5-5 (emphasis in original).

This coverage extends to the on-premises journey between lunchroom and workstation, 1 Larson § 15.51, pp 4-91 *et seq.,* and to injuries incurred when the employee engages in on-premises lunchtime recreation, 1A Larson, § 22.10, pp 5-71 *et seq.*

[7] *Haller v Lansing,* 195 Mich 753; 162 NW 335 (1917).

[8] *Haller* was overruled in *Mack v Reo Motors, Inc,* 345 Mich 268; 76 NW2d 35 (1956). *Mack* was then overruled in *Dyer v Sears, Roebuck & Co,* 350 Mich 92; 85 NW2d 152 (1957), and *Haller* reinstated at that time.

[9] "As directly applied to the noon intermission, it is a long and well-settled rule that the service tie, or contractual relations and obligations between master and servant, is not broken by such suspension

of work required by the contract of employment or of apparent benefit to the employer would ignore numerous holdings of this Court,[10] and confuses the statutory term "course of employment" with the concept of "scope of employment".[11]

For the reasons stated by Justice MOODY, it can be said that lunchtime injuries—at least when they occur on the premises—are compensable so long as the employer-employee "nexus" is not broken.[12] In the light of *Haller,* it cannot be said that the nexus is broken by the lunchtime suspension of work. Rather, it remains intact so long as the employee's conduct is, in Justice MOODY's words—which parallel the *Haller* rationale— "within the normal sphere of permitted and contemplated employee activity".[13]

of all activities directly beneficial to the employer." *Haller v Lansing, supra,* p 758.

[10] See, *e.g., Haller v Lansing, supra; Dyer v Sears, Roebuck & Co, supra; Fidelity & Casualty Co of New York v DeShone,* 384 Mich 686; 187 NW2d 215 (1971); *Thomas v Certified Refrigeration, Inc,* 392 Mich 623; 221 NW2d 378 (1974); *Nemeth v Michigan Building Components,* 390 Mich 734; 213 NW2d 144 (1973).

See also *Salmon v Bagley Laundry Co,* 344 Mich 471, 488; 74 NW2d 1 (1955), where Justice TALBOT SMITH, dissenting, expressly avoided relying on "the benefit theory" (employer benefits if employees are refreshed) as ground for awarding compensation.

[11] "Course of employment is not scope of employment. The former, as the cases so clearly reveal, is a way of life in a working environment. If the injury results from the work itself, or from the stresses, the tensions, the associations, of the working environments, human as well as material, it is compensable." *Crilly v Ballou,* 353 Mich 303, 326; 91 NW2d 493 (1958).

[12] "From an examination of cases * * * in which it has been held that an employee injured on the premises of his employer during the noon hour or other temporary suspension of work was not under the act, *we think it manifest that the controlling reason for denying an award in those cases rests upon the proven facts that the employee broke the so-called nexus between workman and employer* by some manifestly reckless and unreasonable hazard, amounting to intentional and wilful misconduct, or by disregarding, or disobeying, some warning of danger at the place of injury or prohibition relating to the thing being done * * *" (emphasis added). *Haller v Lansing, supra,* p 761.

[13] "He was doing a natural and apparently innocent thing, which a

McClure and Krolczyk voluntarily left their employers' premises. Still, neither can, in principle, be charged with departing from the normal sphere of permitted and contemplated employee activity and therefore the employment nexus, so defined, was not broken. Both did what persons in their work situations, in the language of *Haller,* "may reasonably do"—"a reasonable and natural thing under existing conditions".[14] Indeed, in leaving the premises for lunch, they were doing something that significant numbers of their co-workers did on a regular basis and with their employer's consent (and, in *Krolczyk,* apparent encouragement).

In sum, it would be no extension of prior law to award compensation for injuries sustained during lunchtime although the lunchtime activity has a "personal character", provided that the employment nexus is not broken.

However, in all the cases where compensation was awarded for lunchtime injuries, the injuries occurred on the employer's premises.

The only ground for distinguishing these cases from prior cases is that these injuries occurred when McClure and Krolczyk were not on their employers' premises.

The issue then is whether coverage that would otherwise extend during the lunch period is lost when an employee leaves the premises.

---

workman while employed may reasonably do, especially at a time of intermission from active work." *Haller v Lansing, supra,* p 758.

See also *Salmon v Bagley Laundry Co,* 344 Mich 471, 490; 74 NW2d 1 (1955) (Smith, J. dissenting): "Here, then, is the reason for the compensation award: His injury was suffered during his working day while he was doing a natural thing, a thing which an employee, while working, might reasonably do. The fundamental inquiry is whether or not the act in question, either because of its nature, or local custom, or contractual provision, is reasonably to be regarded as part of the on-the-job activities of the human being involved, a part of his normal and reasonable sphere of activities. If so, it takes place 'in the course of his employment.' "

[14] *Haller v Lansing, supra,* pp 758, 763.

# C

To be sure, it is difficult to articulate a principled basis for a premises cut-off. Arguably, if lunch on the premises is in the "course of employment", so too is lunch off the premises.[15]

Justice Moody understandably concludes that "[a]llowing compensation to be paid only where lunchtime injuries occur on the employer's premises creates a distinction without meaningful difference. An employee who crosses the premises

---

[15] Only the New Jersey Supreme Court has explicitly accepted this approach. Rejecting the suggestion that an employee who leaves the premises at lunchtime "abandons" his employment—a concept apparently equivalent to breaking the nexus—it held the "going-and-coming" rule inapplicable to lunchtime travel. *Hornyak v Great Atlantic & Pacific Tea Co,* 63 NJ 99; 305 A2d 65 (1973); *Wyatt v Metropolitan Maintenance Co,* 74 NJ 167; 376 A2d 1222 (1977). The North Dakota Supreme Court awarded compensation for an off-premises lunchtime travel injury, but its basis of decision is unclear; it did not, however, expressly create a lunchtime exception to the "going-and-coming" rule. *Desautel v North Dakota Workmen's Compensation Bureau,* 72 ND 35; 4 NW2d 581 (1942), *(After Remand)* 75 ND 405; 28 NW2d 378 (1947).

Other courts have allowed recovery for off-premises lunchtime injuries in particular circumstances. *Denver School District #1 v Industrial Comm,* 196 Colo 131; 581 P2d 1162 (1978) (teachers injured going to restaurant on day on which cafeteria was closed, entitled to compensation); *Mission Ins Co v Workers' Compensation Appeals Board,* 84 Cal App 3d 50; 148 Cal Rptr 292 (1978) (coverage only if employee is paid during lunchtime); *Hansen v Superior Products Co,* 65 Idaho 457; 146 P2d 335 (1944) (employee was paid during lunch and no hot meals were available on the premises).

This Court, conceivably, could also establish only a limited lunchtime rule, perhaps with the result that only one of the instant claimants would recover: coverage might turn on whether hot food was available, whether the food service was "adequate", whether going out to lunch generally or going to a particular restaurant had been so standard a part of the employee's work pattern that it can be said that the trip on which the injury occurred must have been within the employer's contemplation.

Coffee-break injuries seem to have received special consideration in other jurisdictions and have been more frequently compensated than lunchtime injuries. See, 1 Larson § 15.54, pp 4-107 *et seq.* The fact that the injury in *Salmon v Bagley Laundry Co, supra,* took place during a coffee break rather than at lunchtime appears, however, to have been assigned no particular importance in our jurisprudence.

threshold and who is injured on his way to lunch is in no real sense less in the course of his employment than his fellow worker who is injured en route to the company cafeteria". I would add that the employee who leaves the premises is in no meaningful way less in the course of his employment than his fellow worker who, about to leave the premises, trips and falls while still on the premises, as in *Dyer v Sears, Roebuck & Co,*[16] where compensation was awarded.

A premises limitation is not inherent in the concept of "nexus", nor need *Haller* be read as limited to on-premises lunchtime injuries. Justice BLACK, dissenting in *Mack v Reo Motors, Inc,* where recovery for a lunchtime injury was denied, said:

"I now move * * * that so-called intermission cases, and this one equally with *Salmon,* be guided again by the precepts of *Haller v City of Lansing, supra.* Such precepts, *and I do not wish to be understood as limiting their scope to the employer's premises* if 'nexus between workman and employer' remains unbroken, are introduced on page 758 of the *Haller Case* in language I have previously quoted, and they continue to the end thereof."[17]

*Mack* was overruled and *Haller* restored in *Dyer.*

This Court has not, however, applied the "nexus" test to off-premises lunchtime injuries, nor has it held the going-and-coming rule inapplicable to lunchtime travel.[18] The extension of *Haller* to

---

[16] Such an employee, of course, is within the "on-premises" amendment, discussed *infra.*

[17] *Mack v Reo Motors, Inc, supra,* p 278 (BLACK, J. dissenting). The passages in *Haller* to which Justice BLACK refers are quoted in part in fns 9, 12 and 13, *supra.*

[18] While a necessary side effect of extending principles developed in

off-premises injuries, although it has logical ap-
peal, is not necessarily compelled.

In four Michigan cases decided between 1914
and 1940, compensation for lunchtime travel inju-

on-premises injury cases to off-premises injuries sustained during
travel would be to hold the going-and-coming rule inapplicable to the
lunch period, the rule would have continued application to pre- and
post-workday travel.

Lunchtime travel can be distinguished from the journey before and
after the workday. Work requirements set the starting and ending
times of the lunchtime trip; the work limits the employee's choices
and conditions his tastes.

Larson's argument to the contrary, § 15.12, p 4-12, is unpersuasive.

He argues that the employee is no less free at lunchtime than he is
at any other time, since the legal obligation to return to work after
lunch is no greater than the obligation to report to work at any other
time. I do not think that the question whether the employee is more
or less free at lunchtime depends on his legal "obligation" to work.
Assuming he intends to stay in good standing with his employer, he is
less free at lunchtime: he can start his travel to work at whatever
time he chooses and there is no employment-related time at which he
must arrive at home at the end of the day. The lunchtime trip,
however, has its starting *and* ending time (and place) designated by
the employer.

Larson also argues that the element of "hurry" only confuses the
issue. "Suppose the employee is an executive taking two hours out for
lunch." 1 Larson, p 4-12. It is elementary, however, that workmen's
compensation cases turn on the facts of each case. If time permits the
employee to wander errantly, if the work does not in fact limit the
employee's range of activity, or color his tastes, then it would not be
difficult to deny recovery.

One must keep in mind that the going-and-coming rule is not a
"rule" as much as a restatement of the conclusion reached in past
cases that travel injuries under consideration did not arise in the
course of employment; a finding that a particular injury did so arise
should automatically render the going-and-coming rule inapplicable.
Specifically, an exception to the rule is properly recognized when
application of the rule that "lunchtime is covered time so long as the
employment *nexus* is unbroken" leads to the conclusion that a partic-
ular off-premises injury should be compensated; as in (but not because
of) *Howard*, it can then be said that the employee was not "merely"
on his way to or from work.

Failure to relax the going-and-coming "rule" in the face of the
principle that "lunchtime injuries wherever they occur are compensa-
ble so long as the employee is doing that which he might reasonably
do" could create the anomalous situation of allowing recovery for
injuries *at* a restaurant—because eating at a restaurant is a reasona-
ble thing for an employee to do—but denying recovery for injuries
during travel *to* the restaurant because travel injuries fall within the
going-and-coming rule.

ries was denied, the Court, explicitly or implicitly, applying the going-and-coming rule.[19] One or more

[19] *Furino v Lansing*, 293 Mich 211; 291 NW 637 (1940), and *Cherewick v Morris G Laramie & Son, Inc*, 295 Mich 570; 295 NW 268 (1940), both concerned employees with no permanently fixed job sites. Michael Furino was assigned to street crews, and was injured in an automobile accident during the lunch period when traveling to the city shed where he had left his lunch. Stephen Cherewick was a power shovel operator who, on the day of his injury, completed work at one location before lunch and was to appear after lunch at a different location; he was injured in an automobile accident when traveling from his home, where he had eaten lunch, to the second job site.

The *Cherewick* Court stated that it could not disturb the board's finding of fact that Cherewick was not in the course of his employment, but was merely on his way to resume his employment, and observed that his lunchtime travel was *indistinguishable from the journey before and after the workday*. Although one might argue that this was so because his workday, divided between separate job sites, was as if two separate workdays, the board's decision appears to have been based on a finding that Cherewick was performing no service for his employer during the lunch period. The denial in *Cherewick* was with citation to *Furino* in which benefits were denied because no service was being performed for the employer at the time of injury and the travel was not in an employer-owned vehicle.

*Hills v Blair*, 182 Mich 20, 27; 148 NW 243 (1914), concerned an employee who, along with his co-workers, customarily ate lunch on the premises, but who, on the day in question, left for work before his wife had packed his lunch. He was killed on his way home for lunch.

The Court applied the going-and-coming rule and denied compensation. The exception for an employee "engaged in his employer's business, discharging any duty or on any errand connected with his employment" was not supported by the facts and the employee was not aided by the rule that "the employment is not limited by the exact time when the workman reaches the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity, before and after, while he is at or near his place of employment".

In *Lipinski v Sutton Sales Co*, 220 Mich 647; 190 NW 705 (1922), the employee, a salesman who usually spent his workday making calls on customers, stayed at the central salesroom because of a special sale. He was injured in an automobile accident when returning to the salesroom from his home where he had eaten lunch. The Court, citing *Hills*, denied compensation because no exception to the going-and-coming rule applied.

For various reasons one might say that these decisions do not or ought not control today's cases. *Hills* and *Lipinski* involved departures from the employee's typical daily patterns; they can be distinguished from today's cases in that one cannot say of them that the activity was, by informal custom, something a worker similarly situated might reasonably and naturally do as part of a normal workday and therefore within the employer's contemplation. *Furino*

of these cases might be distinguished from the instant cases; it is uncertain, though, whether the factual differences suggest any reason why the going-and-coming rule, if applicable to those lunch-time injuries, should not be applicable to lunch-time injuries of the kind that occurred in the instant cases.

All four cases eventually turned on whether the employee was actively serving his employer at the time he was injured. I agree with Justices Kavanagh and Moody that this is too narrow an inquiry. Strict reliance on whether the employee was performing services for his employer is inconsistent with the "nexus" principle, with this Court's subsequent decision in *Crilly v Ballou*,[20] which unequivocally held that "[c]ourse of employment is not scope of employment" and which specifically recognized that an employee's "human deviations" are within the course of employment, with *Howard's* award of compensation in spite of the observation that the decision to leave the premises was voluntary,[21] and with later cases awarding compensation during non-working time.[22] Thus, it could be argued that the four cases, because they relied on an outdated principle, have been superseded by subsequent decisions of this Court.

---

and *Cherewick* were decided at the time of Michigan's parsimony in worker's compensation law, see *Mack v Reo Motors, Inc, supra,* p 281; one might dismiss them as tainted by this parsimony and as superseded by the resurgence in the 1950's of *Haller's* "naturally and reasonably" test of whether the nexus has been broken and *Crilly's* expanded concept of "course of employment".

[20] *Crilly v Ballou, supra,* p 326 (quoting from the dissent in *Salmon v Bagley Laundry Co, supra):* " 'These human deviations * * * do not suspend the employer-employee relationship. They are not departures from employment, but the very substance of it.' "

[21] "We are not unmindful that no incident of plaintiff's employment *required* him in an absolute sense to leave the terminal during the five-hour interval. If he did choose to leave, he certainly was not required to travel by automobile." *Howard v Detroit, supra,* p 109.

[22] See cases cited at fn 10, *supra.*

The cases might, however, be read as imposing higher standards for qualifying for compensation where the injury occurs off the premises.[23] If so, it could then be argued that there are two distinct lines of cases which taken together mean: "Lunchtime injuries on the premises are covered so long as the nexus is unbroken, but lunchtime injuries off the premises are covered only if service for the employer is being performed or some other exception to the going-and-coming rule applies." This, we note, would only lead us back to the starting point: Can this Court, consistent with logic or reason, justify the continued existence of a distinction between on-premises and off-premises injuries?

(1)

The Legislature has provided special treatment

---

[23] *Furino* and *Lipinski*, each requiring a showing of service to the employer as one possible ground for recovery, distinguished *Haller*, a case in which the employee was concededly ministering to his own needs and performing no service for his employer, on the ground that the injury occurred on premises. It is significant that *Lipinski's* closing paragraph began with the observation that "[a]n examination of the cases *where the accident was upon the street* and liability was sustained will disclose that in each case the employee was at the time of the accident in the discharge of his duties to the employer * * *". (Emphasis changed.) *Lipinski v Sutton Sales Co, supra,* p 652. See also *Haggar v Tanis,* 320 Mich 295, 298; 30 NW2d 876 (1948):

"Each of the above cases is distinguishable from the instant case because decision therein hinged upon a finding of one or the other of the following attendant circumstances:

"(1) That, if the injury occurred on the street, the employee at the time of the injury was found to have been *actually engaged* in performing duties incident to his employment.

"(2) Or, that the injury occurred *on the employer's premises* over which he had control and while the employee was engaged in conduct which had the express or implied approval of the employer * * *." (Emphasis in original.)

On the other hand, the *Mack* majority saw *Lipinski* and *Furino* as part of the line of cases overruling *Haller* and commented, "An examination of the above decisions readily discloses the uniform rules which have been followed." *Mack v Reo Motors, Inc, supra,* p 289.

for some injuries on the employer's premises by enacting the "on-premises" amendment:

"Every employee going to and from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment."[24]

This amendment does not, however, purport to limit coverage to only "on-premises" injuries; the statutory presumption that on-premises injuries are compensable carries no negative implication that off-premises injuries are not.[25]

*Haller* awarded compensation applying the nexus test and did not rely on the concept, later embodied in the amendment, that particular injuries might be compensable simply because they occurred on the premises. Justice Talbot Smith elaborated the nexus principle in his influential dissent in *Salmon v Bagley Laundry Co,* 344 Mich 471, 490; 74 NW2d 1 (1955), again without reference to or reliance on the concept embodied in the on-premises amendment.[26] Although *Dyer,* the case in which *Haller* was reinstated,[27] and *Lasiewicki v*

---

[24] MCL 418.301(2); MSA 17.237(301)(2).

[25] This is especially so in light of the amendment's history. The amendment was but a restatement of language appearing in *Brink v J W Wells Lumber Co,* 229 Mich 35; 201 NW 222 (1924), language whose sole statutory base was the "out of and in the course of" provision. The amendment was passed after the Court had retreated from *Brink* and become increasingly restrictive in worker's compensation law. The Court in *Dyer v Sears, Roebuck & Co, supra,* p 95, saw the amendment not as creating new law, but as "a message of courtesy, arriving here from a coordinate branch of government, proposed in the way of intent toward restoration of that which we have errantly excised from the remedial legislation".

[26] See quotation in fn 13, *supra.*

[27] *Dyer v Sears, Roebuck & Co, supra,* pp 95-96.

*Tusco Products Co,*[28] the only post-*Dyer* lunchtime
injury case decided by this Court, were based on
the "on-premises" presumption, the Court did not
thereby reject the independently developing princi-
ple enunciated in *Haller.*

It would not be inappropriate, therefore, to ex-
tend principles developed, independently of the
amendment, in the construction of "out of and in
the course of", when or if it is concluded that
those principles cannot be logically or reasonably
limited to on-premises injuries. The amendment
does not limit the Court's power to do so.

(2)

Another argument in support of a premises cut-
off is based on the nature of worker's compensa-
tion decision making. One commentator has noted
that any given worker's compensation decision
represents a balancing of many factors, one impli-
cation being that principles developed in one con-
text in which certain factors are present—here,
presence on the premises—should not be automati-
cally extended to a separate context, off-premises
injury.[29]

---

[28] *Lasiewicki v Tusco Products Co,* 372 Mich 125; 125 NW2d 479
(1963).

[29] "I hope that the observations in the foregoing pages may prompt
the reader to agree that there are but a few periods during the daily
work routine of the employee that can be regarded without any
qualification whatsoever as being within the course of his employ-
ment. Similarly, there are precious few pieces of normally expectable
employee behavior during the course of the average workday that can
be regarded without question. It is the same when we examine the
nature of typical work hazards. Of all the different risks of harm to
which the worker is exposed during the course of his day, only a
spare handful are risks that unquestionably arise out of his employ-
ment. The two terms are virtually meaningless as arbitrary proposi-
tions. In the last analysis, the process of determining work connection
in a concrete controversy is one that involves the balancing of factors
of time, place, and employee activity against each other and then
against the trier's estimate of the closeness of the relationship of

It might be that the meaning of the cases is that compensation is allowed whenever there is *some* factor on which liability can justifiably be appended: the employee was either performing services, being paid *or* on the premises. Or, it may be that courts have been willing to allow compensation for virtually any on-premises injury because a worker's compensation award relieves the employer of the duty of defending himself in a tort suit, based on ownership or control, which the employee might otherwise bring.

These theories might well *explain* a premises cut-off although they do not adequately justify it. The "tort trade-off" is something the Legislature might appropriately take into consideration when drafting legislation; it is difficult to see how such concerns have any proper place in adjudicating whether a particular employee was or was not "in the course of" his employment, especially now that it is well established that worker's compensation coverage is available although the employer was not at fault for causing the injury,[30] or in control of the employee when injured,[31] and the employment neither increased the risk of injury[32] nor was the proximate cause thereof.[33]

employment risk to the nature of the work." Malone, *The Limits of Coverage in Workmen's Compensation: The Dual Requirement Reappraised,* appearing in 1 Supplemental Studies for the National Commission on State Workmen's Compensation Laws (1973), pp 161, 169.

[30] See, *e.g., Crilly v Ballou, supra; Salmon v Bagley Laundry Co, supra* (Smith, J. dissenting); *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 (1970) (injury caused by tornado, for which employer obviously was not at fault).

[31] *Salmon v Bagley Laundry Co, supra,* (Smith, J. dissenting); *Nemeth v Michigan Building Components, supra.*

[32] See *Burchett v Delton-Kellogg School,* 378 Mich 231, 236; 144 NW2d 337 (1966), holding it irrelevant whether plaintiff teacher's act of transporting books and papers home in her car (on which was based the finding that the trip had a dual purpose) in any way contributed to her risk of injury.

[33] *Whetro v Awkerman, supra.*

### D

Although the theoretical justifications for distinguishing on- and off-premises injuries are weak, a clear majority of jurisdictions that have addressed the question deny coverage for off-premises injuries.[34]

Larson, an avid exponent of the premises limitation, acknowledges that "[a]s to the conceptual category of reasons, no one has ever denied that there is no theoretical, ethical or intellectual reason why coverage of the going-and-coming trip should be limited to the premises",[35] but explains "[t]he real reason for the premises rule is, and always has been, the impracticality of drawing another line at such a point that the administrative and judicial burden of interpreting and applying the rule would not be unmanageable".[36]

A line must be drawn at some point. The premises line might be the appropriate cut-off. The work connection is at least apparent on the premises; administratively, it is relatively easy to determine whether an injury occurred on or off the premises;[37] the premises line is one which one can

---

[34] Larson reports that of those states to have addressed the question, 24 have denied compensation for off-premise lunchtime injuries. 1 Larson, § 15.51, fn 70 and § 15.53. Only New Jersey has explicitly rejected the rule. See fn 15, *supra.*

[35] 1 Larson, § 15.12, pp 4-11, 4-12.

[36] 1 Larson, § 15.12, p 4-13.

[37] The premises line, however, is not without its problems: It is well established that an employer's premises are not necessarily co-extensive with the employer's property. *Lasiewicki v Tusco Products Co, supra.* In *Olejarz v ITE Circuit Breaker Company,* 1972 WCABO 633, a restaurant across the street from the work place was found to be part of the employer's premises. In *Fischer v Lincoln Tool & Die Co,* 37 Mich App 198; 194 NW2d 476 (1972), the street adjacent to the employer's property was held to be part of the premises because the employees were expected to park their cars there. And there are difficult determinations when deciding whether the injury is an "on-premises injury". See, *e.g., Contreras v General Motors Corp,* 1974 WCABO 2474 (during unpaid lunch, driver accelerated auto on prem-

be certain has legislative approval; and, its rejection could extend liability disproportionately.[38]

This, then, is the tension: a premises cut-off is inconsistent with the principles announced in *Haller* and its progeny; practical considerations may, however, warrant the retention of this seemingly arbitrary limitation. A decision either for or against coverage can be justified.

There is, however, another dimension: McClure and Krolczyk sustained their off-premises lunchtime injuries in motor vehicle accidents.

## II

In 1973, the no-fault act[39] went into effect providing benefits for injuries sustained in motor vehicle accidents. An injury compensable under that act might also be compensable under the worker's compensation act because it arose "out of and in the course of" the employment.

Section 3109(1)[40] of the no-fault act allocates the cost of reparations for such injuries between the no-fault and worker's compensation systems: the liability of the no-fault insurer is reduced by the amount of worker's compensation benefits payable.[41]

At the time such set-off was enacted and the

---

ises so fast that it went out of control upon leaving premises; *held:* series of events leading to injury occurred on premises, therefore injury is compensable).

[38] See Larson's "parade of horribles", 1 Larson, § 15.12, pp 4-13, 4-14.

[39] MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

[40] MCL 500.3109; MSA 24.13109:

"(1) Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury."

[41] See *Mathis v Motor Freight System, ante,* 408 Mich 164; 289 NW2d 708 (1980).

legislative allocation made, it was not the law of Michigan that off-premises lunchtime injuries were compensable under the worker's compensation act; coverage for injury sustained in lunchtime motor vehicle accidents had been denied by this Court on three separate occasions.[42] Thus, the legislative allocation was made in the context that the motor vehicle insurance system bore the entire cost of insurance reparations for off-premises lunchtime motor vehicle accidents.

As previously set forth, the extension of coverage sought here can be justified. One might find that the lunchtime motor vehicle cases where coverage was denied are distinguishable, have been superseded, or ought to be overruled; the extension of the *Haller* rationale to off-premises injuries may seem logically compelled.

Nevertheless, an award of benefits today would be an extension of prior law, one not fairly foreseeable by the Legislature. When lunchtime coverage has been granted in recent years, it has been on the basis of the on-premises amendment.[43] Benefits have never been awarded for off-premises travel injuries sustained during a normal lunch period; and when benefits have been awarded for an off-premises (non-lunch) travel injury, it has been under one of the traditional exceptions to the going-and-coming rule[44] or in circumstances the Court stressed were special.[45] This Court has never

---

[42] *Cherewick v Laramie & Son, Inc, supra; Furino v Lansing, supra; Lipinski v Sutton Sales Co, supra.*

The injuries in *Hills v Blair, supra,* although incurred during off-premises lunchtime travel, were not sustained in a motor vehicle accident.

[43] *Lasiewicki v Tusco Products Co, supra.*

[44] *E.g., Burchett v Delton-Kellogg School, supra* (applying the dual-purpose doctrine).

[45] *Howard v Detroit, supra.*

indicated that the creation of a lunchtime exception to the going-and-coming rule was imminent.

A decision in favor of coverage for such injuries, then, would cause § 3109(1) of the no-fault act to work a reallocation of the cost of insurance reparations for lunchtime motor vehicle accidents, one probably not anticipated by the Legislature when § 3109 was enacted. This Court should not disturb the allocation of the burden of providing such reparations struck by the Legislature when it enacted the no-fault act.

It is no answer to say that because the purpose of § 3109 was to reduce the cost of no-fault insurance, a reallocation of the cost of lunchtime motor vehicle accidents away from the no-fault system furthers the Legislature's purpose. The legislative decision embodied in § 3109 may have been based on assumptions regarding the existing costs to the worker's compensation system that did not include payment for lunchtime automobile injuries generally. An extension of worker's compensation liability to lunchtime automobile injuries not previously covered would impose on that system the greater part of the burden of providing insurance reparations for injuries heretofore compensated through the motor vehicle insurance system.[46]

I would, therefore, hold that injuries resulting from off-premises motor vehicle accidents occurring during the normal lunch period in circumstances in which no previously recognized excep-

---

[46] An award of compensation in the instant cases need not, it is true, extend coverage to all motor vehicle accidental injuries sustained during the lunch period, regardless of the nature of the activity in which the employee was engaging. See fns 15 and 18, *supra.* Nonetheless, the rationale behind the proposed and perhaps any theoretically justifiable decisions in favor of the instant claimants is, logically, equally applicable to most lunchtime motor vehicle accident injuries, the number of which cannot be dismissed as insignificant.

tion[47] to the going-and-coming rule is applicable, do
not arise "out of and in the course of" the employ-
ment.

## III

McClure's injury was sustained before the effec-
tive date of no-fault. The disposition set forth in
Part II might be limited to injuries arising after
the effective date of the act (such as Krolczyk's),
and McClure's case decided without regard to the
impact of no-fault.

Although McClure's injury was sustained before
no-fault, subsequent cases arising in the same
factual context—motor vehicle accidents—will not
be governed by anything we might separately say
in respect to *McClure,* but rather by the disposi-
tion set forth in Part II, *supra.*

The only issue of jurisprudential significance left
unresolved by the disposition in Part II is whether
the Worker's Disability Compensation Act covers
off-premises lunchtime injuries not sustained *in*
motor vehicle accidents.

That question, as I have indicated, is a difficult
and troublesome one. There is no satisfactory basis
in theory for denying coverage merely because the
premises threshold has been crossed; practical con-
siderations may, however, militate against exten-
sion of coverage beyond the premises.

That difficult issue should be resolved only in a
case presenting that precise question. A separate

[47] Exemplary are those alluded to in *Hills v Blair, supra,* and the
exceptions recognized in *Howard v Detroit, supra,* (Larson sees *How-
ard* as an application of the "special errand rule", which he discusses
in 1 Larson, § 16.10, pp 4-123 *et seq.); Burchett v Delton-Kellogg
School, supra,* (the "dual-purpose" doctrine), and *Levchuk v Krug
Cement Products Co,* 246 Mich 589; 225 NW2d 559 (1929) (travel in
employer-supplied vehicle). The standard exceptions are discussed in 1
Larson, §§ 15.00-18.44.

decision in *McClure* would color the disposition of the issue left unresolved today.

The Legislature may speak before the issue is before us.

Although case-by-case construction of the phrase "out of and in the course of" may be preferable to a legislative attempt to develop a scheme of detailed rules purporting to cover every possible situation in which a claim for compensation might arise, there are times when legislative guidance in the form of a specific rule applicable to a recurring class of cases is appropriate.

This is such a case. The Legislature can tell us, simply and unequivocally, whether coverage that would ordinarily exist during the lunch period is lost if the injury is sustained off the employer's premises. The Legislature has provided this sort of specific guidance once before, when the "on-premises" amendment was passed.

I join in affirming the WCAB in both *McClure* and *Krolczyk.*

KAVANAGH, J. We granted rehearing in *McClure* and leave to appeal in *Krolczyk* for the purpose of considering whether the workers' lunchtime injuries arose out of and in the course of their employment. MCL 418.301; MSA 17.237(301).

I

Gary McClure, deceased husband of plaintiff Carol McClure, was employed at the General Motors Fleetwood Plant in Detroit. The Fleetwood Plant occupies a corner bounded by West Fort St., running east and west, and by West End Ave., which runs north and south. The plant is located south of Fort St. and west of West End Ave.

The Fleetwood Inn, a bar, is located across Fort St. from the Fleetwood Plant and approximately 200 feet west of the intersection of West End Ave. and Fort St.

Gary McClure was working his usual shift on April 14, 1973, the day he sustained the injuries which resulted in his death on November 8, 1973. The shift began at 6 a.m. and was to end at 2:30 p.m., with a 30-minute unpaid lunch break.

A cafeteria and lunch wagon were provided on the premises of the plant for the convenience of the employees. There was no requirement that the employees utilize these facilities and they were permitted to go off the plant premises for lunch. Approximately 50 to 100 employees, including Gary McClure, habitually chose to lunch at the Fleetwood Inn, which on a direct line was located about 75 yards away from the plant.

On the day of the injury, he and some others were going to the Fleetwood Inn for lunch. Instead of crossing at the intersection where there were traffic signals, McClure attempted to cross Fort Street in mid-block and was struck by an automobile.

The administrative law judge awarded workers' compensation benefits on September 19, 1974. The appeal board reversed on October 13, 1976, holding that the injuries and consequent death did not arise out of and in the course of employment. The Court of Appeals denied leave to appeal on March 25, 1977.

On March 13, 1978, this Court reversed in a per curiam opinion. We held that the injuries did arise out of and in the course of employment because it was as " 'a circumstance of his employment' " and "as an incident of the employment relationship"

that McClure found himself where he was at the time he was injured. 402 Mich 392, 395; 262 NW2d 829 (1978). A motion for rehearing was filed by defendant and granted by this Court on June 5, 1978.

Kimberly Ann Krolczyk seeks compensation for lunchtime injuries she suffered on February 1, 1974. She was a salaried employee at defendant Wolverine Moving and Storage Company in Livonia. She worked daily from 8 a.m. to 5 p.m., and was entitled to a one-hour lunch break.

Vending machines containing candy and soft drinks were located on the premises. A refrigerator was furnished in the ladies' restroom, but no facilities for hot meals were provided. In its opinion, the appeal board stated that the employees were encouraged to leave their desks during the lunch period. There was testimony that the reason the employees were given an hour for lunch was to provide them an opportunity to leave the premises, and thus segment the workday, so that the employees could return refreshed for the afternoon's work.

Plaintiff customarily went to lunch off the premises. On the day she was injured, plaintiff and a coworker were driving to a restaurant where, approximately one-half mile from defendant's place of business, their car struck a rut and went out of control. As a result plaintiff sustained severe injuries.

The appeal board affirmed the referee's denial of benefits on August 12, 1977. After the Court of Appeals denied leave to appeal, this Court granted the plaintiff's application for leave to appeal on June 5, 1978, ordering the case argued and submitted together with *McClure.*

II

The defendants in each of these cases contend that the contracts of employment did not require, directly or indirectly, that the employees be where they were at the time of the injuries. Therefore, defendants argue, the injuries did not arise out of and in the course of employment. We reject this argument and hold that the injuries are compensable.

In the initial *McClure* opinion, we cited *Howard v Detroit,* 377 Mich 102, 109; 139 NW2d 677 (1966), wherein compensation was granted the employee bus driver even though "no incident of plaintiff's employment *required* him in an absolute sense to leave the terminal during the 5-hour interval" between his morning and afternoon shifts. (Emphasis in original.) Despite the lack of compulsion, this Court held in *Howard* that because "it was a circumstance of his employment that placed plaintiff in this case where he was when he was accidentally injured", he was entitled to compensation benefits. 377 Mich 110. We are still convinced of the soundness of that rationale. The significant inquiry in the instant cases is not whether the employees were injured while carrying out duties absolutely required by their employment contracts, but whether the injuries occurred as a circumstance of the employment relationship. We are satisfied they did.

In both *McClure* and *Krolczyk,* the workers were permitted to go off premises for their lunch.[1] In-

---

[1] Whether the employees were negligent in these cases is irrelevant to the issue of whether workers' compensation benefits are payable. In *Whetro v Awkerman,* 383 Mich 235, 242-243; 174 NW2d 783 (1970), we stated:

"The purpose of the compensation act as set forth in its title is to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees. The

deed, Kimberly Ann Krolczyk was encouraged to do so because of the benefits accruing to the defendant in having a refreshed employee. Their freedom to do as they wished during lunchtime was limited by the requirements of their employment. In *Wyatt v Metropolitan Maintenance Co,* 74 NJ 167; 376 A2d 1222 (1977), the New Jersey Supreme Court upheld an award of benefits to an employee injured during lunchtime and while off the premises of his employer. The court stated, 74 NJ 171:

"[A]n employee who interrupts his work and leaves his place of employment for lunch knows that he has not completed his workday and that he will be returning as soon as his lunch is over. His time is not really his own. *[Hornyak v The Great Atlantic & Pacific Tea Co,* 63 NJ 99, 107-108; 305 A2d 65 (1973)].* Midday meal periods have long been recognized as an integral part of the work routine."

It was a circumstance of their employment that McClure and Krolczyk were where they were when the injuries befell them. During the workday when an employee is injured in the course of an activity which is incidental to the employment the

legislative policy is to provide financial and medical benefits to the victims of work-connected injuries in an efficient, dignified, and certain form. The act allocates the burden of such payments to the most appropriate source of payment, the consumer of the product.

"Fault has nothing to do with whether or not compensation is payable. The economic impact on an injured workman and his family is the same whether the injury was caused by the employer's fault or otherwise.

"We hold that the law in Michigan today no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation. The cases which have allowed recovery for street risks, increased risks, and on-the-premises accidents were made without consideration of the proximate causal connection between the nature of the employment and the injury. They have brought the law in Michigan to the point where it can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid."

injuries are said to have arisen out of and in the course of that employment. This is true whether the injury arises on the premises[2] or off the premises.[3] The lunch breaks in both *McClure* and *Krolczyk* were incidental to their employment.

We do not by this holding impose upon the employer the burden of guaranteeing the general health and well-being of the employee. As we stated in the first *McClure* opinion, recognizing that these injuries arose out of and in the course of the employment "does not require abandonment of the general rule that injuries sustained while going to or coming from work do not arise out of and in the course of one's employment, except as modified by MCL 418.301(2); MSA 17.237(301)(2)". 402 Mich 392, 395, fn 2. See, also, *Wyatt, supra,* 171-172.

Reversed and remanded to the Workmen's Compensation Appeal Board for proceedings consistent with this opinion.

WILLIAMS and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

BLAIR MOODY, JR., J. *(dissenting).* Under the facts presented in each of the instant cases an award of compensation is warranted. Both injuries arose out of and in the course of employment. MCL 418.301; MSA 17.237(301).

In 1970, our Court stated in *Whetro v Awkerman,* 383 Mich 235, 242-243; 174 NW2d 783 (1970):

---

[2] By virtue of the so-called on-premises amendment, MCL 418.301(2); MSA 17.237(301)(2), an employee injured on the premises during lunchtime is "presumed to be in the course of his employment". See, also, *Dyer v Sears, Roebuck & Co,* 350 Mich 92, 95; 85 NW2d 152 (1957).

[3] See, *e.g., Wyatt, supra; Hornyak, supra; Dependents of Pacheo v Orchids of Hawaii,* 54 Hawaii 66, 69; 502 P2d 1399, 1401 (1972).

"Fault has nothing to do with whether or not compensation is payable. The economic impact on an injured workman and his family is the same whether the injury was caused by the employer's fault or otherwise.

"We hold that the law in Michigan today no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation. The cases which have allowed recovery for street risks, increased risks, and on-the-premises accidents were made without consideration of the proximate causal connection between the nature of the employment and the injury. They have brought the law in Michigan to the point where it can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid." (Footnotes omitted.)

To be compensable, the injury suffered must have occurred in the course of employment. Course of employment may not be equated with scope of employment.[1] Rather, the concept of course of employment was formulated to encom-

---

[1] It was precisely the erroneous importation of tort concepts such as "scope of employment" into the analysis of whether an injury was sustained in the course of employment, which led to denial of workers' compensation benefits in prior cases involving lunch break and coffee break injuries.

See, *e.g., Hills v Blair,* 182 Mich 20, 29; 148 NW 243 (1914) (lunch hour injury did not occur in course of employment since employee was not "within the scope of his employment, [and] was not under the direction or control of his employer"); *Daniel v Murray Corp of America,* 326 Mich 1; 39 NW2d 229 (1949) (employee injured in parking lot supplied by employer, after completion of work shift, was not in course of employment); *Salmon v Bagley Laundry Co,* 344 Mich 471, 474; 74 NW2d 1 (1955) (coffee-break injury suffered on employer's premises was not in course of employment since the employee was not performing a duty she was hired to perform); *Mack v Reo Motors, Inc,* 345 Mich 268, 290-291; 76 NW2d 35 (1956) (injury suffered on employer's premises during lunch hour while employee was en route to company cafeteria did not occur in the course of employment, since, under *Salmon,* employee was not within the scope of employment or under the control of employer at the time of injury).

The majority opinions of *Salmon, Daniel* and *Mack* were expressly overruled in *Dyer v Sears, Roebuck & Co,* 350 Mich 92, 96; 85 NW2d 152 (1957).

pass activity falling within the normal sphere of
employee activity associated with the work rou-
tine.

Over 60 years ago, this Court correctly recog-
nized that an employee injured during the lunch
period, while not actually performing the work of
his employer, may be engaged in an activity in the
course of employment. In *Haller v Lansing,* 195
Mich 753; 162 NW 335 (1917), an injury suffered
on the employer's premises during the lunch hour
was held to have occurred in the course of employ-
ment, based upon the following principles:

"[D]irectly applied to the noon intermission, it is a
long and well-settled rule that the service tie, or con-
tractual relations and obligations between master and
servant, is not broken by such suspension of all activi-
ties directly beneficial to the employer.

" 'A workman *is considered in the employment of his*
master during the intermission for the noon hour if he
remains upon the premises.' Baldwin on [Personal]
Injuries (2d ed), § 374.

\*   \*   \*

"[W]hile such relation so continues, an injury to an
employee may arise out of and in the course of his
employment, although he is not directly engaged in the
work of his employment at the time." *Haller, supra,*
758-759.

The *Haller* Court opined that the employee in
that case was injured in an activity reasonable for
a worker to engage in during a lunch period at a
place it was reasonable for the employee to be
located. The "employment nexus" remained intact,
not having been broken by employee conduct such
as wilful misconduct or disregard of employer
instructions regarding time, place and nature of
permissible employee activity.

The soundness of the *Haller* rationale was reaf-

firmed in *Dyer v Sears, Roebuck & Co,* 350 Mich
92; 85 NW2d 152 (1957), where an injury suffered
on the employer's premises during the lunch pe-
riod was held to have arisen out of and in the
course of the employment.[2]

The reasoning employed by the *Haller* Court
was also adopted and expanded upon by Justice
TALBOT SMITH dissenting in *Salmon v Bagley
Laundry Co,* 344 Mich 471; 74 NW2d 1 (1955).[3] In
*Salmon* the employee sustained an injury upon the
steps of the employer's premises during a coffee
break while returning from a restaurant located
across the street from the premises. Justice SMITH
concluded the injury occurred in the course of
employment, proffering the following rationale:

"The words 'course of employment' in our act include
the coffee break simply because the product, which
must shoulder the burdens of injuries in its manufac-
ture, is made by a human being. He brings to his work
all of his human characteristics, his frailties as well as
his virtues. * * * 'Course of employment' is not a

---

[2] Writing for the majority in *Dyer,* Justice BLACK found the injury
suffered to have occurred in the course of employment according to
the prior case of *Haller, supra.* The fact that the majority opinion in
*Dyer* rested upon principles set forth in *Haller* was reiterated by
Justice BLACK in his opinion issued in *Simerka v Pridemore,* 380 Mich
250, 266; 156 NW2d 509 (1968).

Justice DETHMERS, concurring with the majority in *Dyer,* considered
that the injury suffered was compensable. However, Justice DETH-
MERS' conclusion was not premised upon a finding that the employee's
injury occurred during the course of employment under prior case
law. Rather, he concluded that the injury was compensable by reason
of 1954 PA 175 which amended the Workers' Disability Compensation
Act to provide as follows:

"Every employee going to or from his work while on the premises
where his work is to be performed, and within a reasonable time
before and after his working hours, shall be presumed to be in the
course of his employment."

[3] The majority opinion in *Salmon, supra,* was expressly overruled in
*Dyer, supra,* 96. Justice SMITH's dissent in *Salmon* was adopted as
authority by four of the justices concurring in *Freiborg v Chrysler
Corp,* 350 Mich 104, 112; 85 NW2d 145 (1957).

sterile form of words. It is descriptive of life in the industrial age. These human deviations from the course of the automaton do not suspend the employer-employee relationship. They are not departures from employment, but the very substance of it. They are the inevitable concomitants of the working relationship and conditions which produce the product. Its cost must reflect the fatigue, the irritations, and sometimes the blood that went into it. * * *

"[T]he course of employment of a human being * * * includes not only his repetitive acts at the machine to which he is assigned, but includes, as well, his ministrations to his human needs. Some courts have explained these cases on the theory of 'indirect benefit' to the employer, since an uncomfortable employee does not efficiently serve his employer, some on the theory of mutual benefit, since the gratification of the need is also a solace to the worker. Recovery in this case, the record makes clear, could be rested on either of these grounds as appears from the background of the contractual provisions concerning the coffee break".[4]

"Our decision, however, should not be grounded upon the benefit theory since there is a more fundamental principle involved. It is well described in one of our early decisions. In the case of *Haller v Lansing,* 195 Mich 753, 758-760 (LRA1917E, 324), a claim arose out of an employee's accidental death from injuries suffered on his employer's premises during his lunch hour. * * * In approving the compensation awarded we said, in part:

" 'He was doing a natural and apparently innocent thing, which a workman while employed may reasonably do, especially at a time of intermission from active work.'

* * *

---

[4] In *Salmon,* the agreement between the employer and its employees provided that the employees could choose to remain upon the premises during the coffee break. The employees were also expressly permitted to obtain food and drink from the restaurant located across the street since no such facilities were located upon the employer's premises. This particular restaurant and the employer's premises were the only places where employees were allowed to go during the break.

"Here, then, is the reason for the compensation award: His injury was suffered during his working day while he was doing a natural thing, a thing which an employee, while working, might reasonably do. The fundamental inquiry is whether or not the act in question, either because of its nature, or local custom, or contractual provision, is reasonably to be regarded as part of the on-the-job activities of the human being involved, a part of his normal and reasonable sphere of activities. If so, it takes place 'in the course of his employment.' " *Salmon, supra,* 486-488, 490.

The activities of the employees in the instant cases, at the time of injury, fell within the course of their employments. Lunch periods are now customarily considered an integral part of the work routine. The employment agreements of both employees provided that the employees be permitted, during the course of their working day, a certain period of time for lunch.[5] The duration of each lunch period was definite and reasonably brief. Both injuries were suffered during the time period designated for lunch.

The injuries in both cases occurred off the employer's premises.[6] Both employees were injured at places it was reasonable for them to be located during the lunch period. Both employers either acquiesced in or actually encouraged the employee practice of departing from the premises to obtain refreshment elsewhere.[7] In leaving their place of

[5] Gary McClure was allowed a 30-minute lunch period. Kimberly Krolczyk was given one hour as a lunch break.

[6] Gary McClure was struck by a car while attempting to cross a street which abutted his employer's premises. Kimberly Krolczyk was injured while driving her automobile. When the accident occurred, she had traveled a distance of approximately one-half to three-quarters of a mile from her office.

[7] McClure's employer acquiesced in the custom of certain employees eating lunch regularly at a tavern located across the street from the plant. Ms. Krolczyk's employer encouraged its employees to leave their desks during the lunch period. The WCAB opinion indicates it

work, neither employee was disobeying any reasonable employer rule or instruction.

Allowing compensation to be paid only where lunchtime injuries occur on the employer's premises creates a distinction without meaningful difference. An employee who crosses the premises threshold and who is injured on his way to lunch is in no real sense less in the course of his employment than his fellow worker who is injured en route to the company cafeteria. Application of this rule is certainly questionable where the facts indicate that no lunch facilities or no adequate facilities have been provided on the premises.[8]

Finally, at the time of injury both employees were traveling to a place for the purpose of obtaining lunch, an activity reasonably related to the purpose for which the lunch period was created. Their conduct was reasonable and within the normal sphere of permitted and contemplated employee activity. The employment nexus remained intact.

---

was customary for all but one of Ms. Krolczyk's co-workers to leave the premises to eat lunch.

[8] In each of the instant cases there was some dispute as to the adequacy of lunch facilities provided upon the employer's premises.

In the case of McClure, the WCAB found that there were 1800 to 2500 persons employed at the plant. The employees ate lunch in two 30-minute shifts which were staggered. The lunch facilities on the premises included lunch wagons which offered some hot sandwiches, a cafeteria, and vending machines. The cafeteria had a seating capacity of 500 persons.

In the case of Ms. Krolczyk, the WCAB found:

"The record reveals defendant asked their [sic] employees not to keep food in their desks because of the danger of pests and rodents. * * * There were no cooking facilities on the premises. There was a refrigerator for the employees use in the ladies lounge. A canteen truck came at nine o'clock in the morning with coffee, cakes, sandwiches and soups. Plaintiff testified that when she came to work for defendant, she was told by the secretary to the president that, if she ate her lunch at work, she should eat in the ladies lounge. In that room there was a couch, chairs and a table. This room was separated from the ladies toilet facilities by a wall, but there was a doorway with an arch, and no door, between the two rooms."

Accordingly, for these additional reasons it is concluded that the injuries suffered by both employees arose out of and in the course of their respective employments.

Williams, J., concurred with Blair Moody, Jr., J.