[S.F. No. 25020. June 18, 1987.]

ALYCE JONES et al., Plaintiffs and Appellants, v.
KAISER INDUSTRIES CORPORATION, Defendant and
Respondent;
CITY OF FREMONT, Defendant and Appellant.

554

**COUNSEL**

Richard B. McDonough, Christopher D. Burdick, Donald T. Ramsey, Russell Leibson, James B. Clapp and Carroll, Burdick & McDonough for Plaintiffs and Appellants.

Ralph A. Lombardi and Hardin, Cook, Loper, Engel & Bergez for Defendant and Appellant.

Alice C. Graff, City Attorney (Hayward), and Tessie Belue, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Appellant.

John D. St. Clair, St. Clair, Zappettini, McFetridge & Griffin and Cyril Viadro for Defendant and Respondent.

**OPINION**

**MOSK, J.**—On June 6, 1976, David Jones (decedent), a police officer employed by the City of Fremont, was killed in an automobile accident while on duty, when a car driven by Terence Reubel crashed into his patrol car. Decedent's wife and two sons (plaintiffs) sued the city in an action for wrongful death, claiming that the city had created and maintained a dangerous condition at the intersection where the accident occurred. We must decide whether such an action will lie, or whether plaintiffs are prohibited from suing the city for damages because decedent was an employee entitled to recover workers' compensation benefits at the time of the injury which led to his death.

Two streets form a "T" at the intersection of Newark Boulevard and Lowry Road, just north of the Newark Boulevard bridge. Decedent was traveling on Lowry Road and making a left turn onto Newark when Reubel entered the intersection and hit the side of decedent's patrol car. The city paid $128 for emergency medical care for the decedent, $100 for ambulance

service, and a $1,000 burial allowance. Plaintiff spouse applied for and received the special death benefit provided by section 21363 of the Government Code for public safety members of the Public Employees' Retirement System (PERS).[1] Up to the time of trial, she had received monthly payments totalling $35,810. She did not apply for workers' compensation benefits.

Thereafter, plaintiffs filed this action against the city, Reubel, and others, alleging, inter alia, that the city planned, designed, constructed and maintained the bridge in a dangerous condition because the railings obstructed the view of decedent at the time of the accident, and that the city was aware of the danger, but failed to remedy it or to warn the public of the hazard. The city pleaded as an affirmative defense that the action was barred because plaintiffs' exclusive remedy was the compensation to which they were entitled under the workers' compensation law. (Lab. Code, § 3600 et seq.)[2]

After a special trial on the affirmative defense, the trial court found against the city. It determined that, although decedent's death occurred in the course and scope of his duties as a policeman, section 4707 precluded plaintiffs from obtaining workers' compensation benefits following his death,[3] and that, therefore, plaintiffs were entitled to sue the city for negligence. As a second ground for its determination, the court found that the city was subject to suit because in constructing and maintaining the Newark Boulevard bridge and the warning signs around it, the city was acting in a "dual capacity" toward decedent in that at the time of the accident he was both an employee and a member of the general public for whose benefit the bridge and its surroundings were maintained.

The matter proceeded to trial before a jury on the issue whether the city was negligent in failing to warn of or protect against the dangerous condition of the bridge and its surroundings. The jury returned a verdict for the city, and plaintiffs appealed from the ensuing judgment. The city filed a protective cross-appeal from the trial court's order determining that workers' compensation was not plaintiffs' exclusive remedy. The Court of Appeal reversed the judgment in favor of the city on the ground of errors in instructions to the jury. However, it affirmed the trial court's determination that

---

[1] All statutory references, unless otherwise noted, are to the codes as they existed at the time of the accident in June 1976.

Section 21363 provides in part, "The special death benefit is payable if the deceased was a . . . local safety member, if his death was industrial and if there is a survivor who qualifies under subdivision (b) of section 21364. The Workers' Compensation Appeals Board, using the same procedures as in workers' compensation hearings, shall in disputed cases determine whether the death of a member was industrial."

[2] Citation of sections without a code reference are to the Labor Code.

[3] The text of section 4707 is set forth post.

plaintiffs were entitled to sue the city for negligence. In seeking review before this court, the city challenges only the latter determination.

■ Our first inquiry is whether, as plaintiffs claim, they are entitled to bring this action at common law seeking damages for decedent's death because they are precluded from recovering the death benefits afforded by the workers' compensation law. Generally, workers' compensation is the exclusive remedy for injury or death of an employee occurring while he is acting in the course and scope of his employment and where, at the time of the injury, the employer and employee are subject to the workers' compensation law (§ 3600),[4] provided that the "conditions of compensation exist" (§ 3601, subd. (a)).[5] Plaintiffs assert that despite the fact decedent was killed in the course and scope of his employment, a civil action is not barred because the "conditions of compensation" do not exist here. They base their claim on the provisions of section 4707, which they construe as expressly prohibiting the recovery of workers' compensation benefits and requiring them, instead, to resort to PERS for compensation.

As a city employee, decedent was a contract member of PERS (Gov. Code, § 20450 et seq.), which provides pension and other benefits to public employees, and he was also entitled to workers' compensation. Both systems offer a death benefit to the survivors of employees, but they differ in numerous respects, including the amount of benefits and the basis on which they are awarded. If, as here, the decedent was a "local safety member" of PERS and died as the result of an industrial injury, his survivors are entitled to a "special death benefit" provided by section 21363 of the Government Code, the amount of which depends on his income. (Gov. Code, § 21364, subd. (b).) The death benefit under workers' compensation is fixed, and it is calculated not on the decedent's income, but on the extent to which his survivors were dependent on him for support. (§§ 4702, 4703.) Both employer (Gov. Code, § 20740 et seq.) and employee (id., § 20600 et seq.) contribute to PERS, whereas the entire cost of workers' compensation

---

[4] Section 3600 provides in relevant part, "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person ... shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

"(b) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment and is acting within the course of his employment."

[5] Section 3601 provides in part, "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is ... the exclusive remedy for injury or death of an employee against the employer."

benefits is borne by the employer (§ 3751). PERS, unlike workers' compensation, contains no provision making it the exclusive remedy for injury or death suffered in the employment.

Our problem concerns the relationship between these two systems in the case of a local safety member of PERS who suffers an industrial injury and whose survivors are entitled to the special death benefit pursuant to section 21363 of the Government Code. That relationship is specified by section 4707. The section appears in division 4 of the Labor Code, which encompasses the workers' compensation law. It provides, "No benefits, except reasonable expenses of burial, not exceeding one thousand dollars ($1,000) shall be awarded under this division on account of the death of an employee who is a member of the Public Employees' Retirement System unless it shall be determined that a special death benefit, as defined in the Public Employees' Retirement Law ... will not be paid by the Public Employees' Retirement System to the widow or children under 18 years of age, of the deceased, on account of said death, but if the total death allowance paid to said widow and children shall be less than the benefit otherwise payable under this division such widow and children shall be entitled, under this division, to the difference."

Plaintiffs assert that the section prohibits the payment to them of workers' compensation; they rely on the portion which provides that "[n]o benefits ... shall be awarded" under workers' compensation "on account of the death of an employee who is a member of the Public Employees' Retirement System unless" the special death benefit will not be paid by PERS. But this is a selective and inaccurate reading of the terms of the section. It is clear that at least one form of workers' compensation benefits must be paid under it, namely, burial expenses.[6] Such expenses were in fact paid by the city.[7] In addition, the survivors of PERS members who would receive a higher death benefit under workers' compensation than PERS are entitled to a supplement from workers' compensation of the difference.

Plaintiffs argue that because the benefits they received from PERS are higher than the amount to which they would have been entitled under

---

[6]The term "compensation" includes burial expenses. (§§ 3207, 4701.)

[7]We reject plaintiffs' argument that these payments may not be considered "compensation" under section 4707. Burial expenses are "compensation" under sections 3207 and 4701, as we note above, and section 4707 excepts such expenses from any prohibition against the payment of workers' compensation benefits.

The city also paid workers' compensation of $228 for medical and ambulance expenses following the accident; it is unclear whether these payments were made "on account of the death" of decedent under section 4707.

workers' compensation, they did not receive the supplementary sum referred to in the last part of section 4707; therefore, the "conditions of compensation" do not exist as to them and they are free to bring this action against the city. We cannot agree. Leaving aside for the moment the fact that plaintiffs did receive workers' compensation benefits in the form of burial expenses, even if they were not paid the supplementary benefit referred to in section 4707, it would not follow that they are automatically entitled to bring a common law action. It has been held, for example, that the survivors of an employee whose death was industrial in nature are not entitled to sue the employer for damages merely because they did not qualify to recover death benefits under workers' compensation since they were not dependents of the decedent. (*Seide* v. *Bethlehem Steel Corp.* (1985) 169 Cal.App.3d 985, 991 [215 Cal.Rptr. 629]; *Soil Engineering Construction, Inc.* v. *Superior Court* (1982) 136 Cal.App.3d 329, 333 [186 Cal.Rptr. 209].)[8]

Plaintiffs' rights are derived from decedent's status as an employee who was covered by the workers' compensation law at the time of the injury which led to his death. Section 4707, a provision of that law, is designed not to exclude plaintiffs from recovering workers' compensation benefits, but to assure that they receive the maximum death benefits payable under either PERS or workers' compensation. In effect, the section commands an offset of workers' compensation against the special death benefit of section 21363 of the Government Code where, as here, the survivors would recover a greater amount under PERS than they would under workers' compensation.

Acceptance of plaintiffs' interpretation of the section would lead to results the Legislature could not have intended. The question whether the survivors of a police officer could bring a common law action would depend entirely on fortuitous circumstances. We can discern no rational basis for allowing survivors of an officer who happened to receive higher death benefits under PERS than under workers' compensation to bring such an action, while denying that right to one whose PERS benefits were lower. The same anomaly would exist as between an officer who was injured and one who was killed in the line of duty. In the former situation, as plaintiffs

---

[8] Plaintiffs attempt to distinguish these cases on the ground that even though the employees involved there had no dependents who were entitled to receive the death benefit, section 4706.5, subdivision (a), requires that the benefit be paid by the employer to the Department of Industrial Relations. Here, they claim, the city would be free of all liability if the action is not allowed and would "walk away from the industrial death of an employee" free of any financial obligation. As we shall see, however, the special death benefit is paid partly from the city's contribution to PERS.

concede, the employee would be confined to his remedy by way of workers' compensation benefits, but in the latter the survivors could sue at common law. And what of the officer who suffers an industrial injury, receives workers' compensation, and thereafter dies of his injuries? Such an employee is barred from bringing a civil suit while he is alive, but may his survivors do so after he dies? There are no reasonable grounds for such distinctions, and plaintiffs do not suggest how they can be justified.

Plaintiffs rely on the rule that an action against the employer for intentional infliction of emotional distress unaccompanied by physical harm is not barred because damages for such injuries are not cognizable under workers' compensation. (E.g., *McGee* v. *McNally* (1981) 119 Cal.App.3d 891, 895 [174 Cal.Rptr. 253]; *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833, 842 [147 Cal.Rptr. 447]; see *Hollywood Refrigeration Sales Co.* v. *Superior Court* (1985) 164 Cal.App.3d 754, 758 [210 Cal.Rptr. 619].) They assert that they should be allowed to sue the city because, like the plaintiffs in those cases, they are precluded from receiving workers' compensation benefits for decedent's death. But the cases cited above all involved intentional misconduct by the employer, and they reasoned that if a common law action is not allowed the employee will be left without any remedy for such conduct. Here the survivors of decedent are not left uncompensated for the decedent's death if workers' compensation is not allowed; indeed, they receive the higher PERS death benefit.

Plaintiffs are in error in asserting that if we hold in the city's favor, it will escape any financial liability resulting from the death of decedent. The city, through its payments to PERS on behalf of decedent has contributed to the special death benefit (Gov. Code, § 20740 et seq.) and, depending on the life expectancy and future marital status of decedent spouse and the age of his children, the value of that benefit to plaintiffs could substantially exceed the amounts they would have received under workers' compensation.[9]

A final contention of plaintiffs on this aspect of the case is based on the fact that decedent was required to and did contribute to PERS 7 percent of his salary (Gov. Code, § 20600 et seq.), and this contribution is used to defray part of the cost of the special death benefit (*id.,* §§ 21361, 21364,

---

[9] The special death benefit entitles a spouse to the payment at a minimum of one-half of the decedent's final compensation for her lifetime if she does not remarry. If there is no surviving spouse, or if the spouse remarries, the benefit is payable to the employee's children until they reach the age of 18 or marry. If, as here, the employee was killed in an accident, the survivors are paid an additional sum amounting to 25 to 50 percent of decedent's final compensation during the time the children are under 18 and unmarried. (*Id.,* § 21364, subd. (b).)

subds. (a), (b)). Since these payments were made with community funds, assert plaintiffs, if the special death benefit is viewed as workers' compensation plaintiff spouse would be paying in part for her own workers' compensation benefits, in violation of section 3751.[10]

The special death benefit is paid by PERS rather than by workers' compensation. The fact that plaintiffs' right to that benefit is derived from section 4707, a provision of the workers' compensation law, does not mean that the benefit is paid under that system. Moreover, section 21366 of the Government Code provides that if payment of the special death benefit is terminated due to the death or remarriage of the spouse or other circumstances, decedent's remarried spouse is entitled to a lump sum refund of any excess of his contributions over the monthly death benefits she received.[11] Finally, plaintiffs will probably receive as the special death benefit more than the amount of decedent's contributions to PERS, since his spouse is entitled at a minimum to 50 percent of his final compensation for life or until remarriage (Gov. Code, § 21364, subd. (b)), whereas decedent contributed only 7 percent of his salary to PERS.

■ The second basis for the Court of Appeal's ruling in plaintiffs' favor is that the city occupied toward decedent a dual role, i.e., that of employer and of a public entity charged with a duty to the general public to maintain the safety of the city's streets, and the decedent's injuries arose from the city's violation of its duties toward decedent as a member of the general public rather than as his employer. ■ The dual capacity doctrine, first enunciated in this state in *Duprey* v. *Shane* (1952) 39 Cal.2d 781, 793 [249 P.2d 8], holds that if the employer occupies toward his employee a second relationship that imposes obligations different from those he has undertaken in his capacity as employer, he may be liable in tort in the event the employee is injured as a result of the violation of those distinct obligations. The rule has generally been applied to cases in which the employee was injured at work by the use of a product which the employer manufactured for public distribution (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 282 [179 Cal.Rptr. 30, 637 P.2d 266]; *Siva* v. *General Tire & Rubber Co.* (1983) 146 Cal.App.3d 152, 157, 158 [194 Cal.Rptr. 51]; *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 113 [137 Cal.Rptr. 797]), or where the employer steps out of his role as employer by providing medical care to the employee (*Duprey, supra,* 39 Cal.2d 781; *D'Angona* v.

---

[10]Section 3751 provides: "No employer shall exact or receive from any employee any contributions, or make or take any deduction from the earnings of any employee either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this section is a misdemeanor."

[11]If there is no surviving spouse the surviving children are entitled to that sum, and in the absence of such children the estate of the deceased is paid the allowance.

*County of Los Angeles* (1980) 27 Cal.3d 661, 667 [166 Cal.Rptr. 177, 613 P.2d 238]). In 1982, following the accident involved in this case, the Legislature severely limited the scope of the rule by confining its application to a narrow class of product liability cases. (§ 3602, subd. (c).)

 The city in turn relies on the well-established rule that an employee cannot sue his employer for injuries resulting from the employer's failure to comply with his duties as a landowner or to provide a safe place to work. (*Blew* v. *Horner* (1986) 187 Cal.App.3d 1380, 1391-1392 [232 Cal.Rptr. 260]; *Royster* v. *Montanez* (1982) 134 Cal.App.3d 362, 370-373 [184 Cal.Rptr. 560]; see *Johns-Manville Products Corp.* v. *Superior Court* (1980) 27 Cal.3d 465, 474 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; 2A Larson, Workmen's Compensation Law (1986) § 72.82, p. 14-238.) *Royster* sums up the reason for the rule: "[A] substantial proportion of work-related injuries are caused, or plausibly can be alleged to be caused, by a dangerous condition of the place of employment. If the dual capacity doctrine were to be construed so broadly as to create premises liability in every such instance, little would be left to which exclusivity of remedy could attach." (134 Cal.App.3d at p. 373.)

Plaintiffs attempt to distinguish these cases on the grounds that a public intersection is not a place of work for public employees, that while the city's obligation to provide a safe workplace is integral to its duties as an employer, the duty to maintain safe streets is not, and that, unlike the premises liability cases relied on by the city, only a public agency has the duty to maintain safe streets.

 On the other hand it cannot be denied that as to police officers, the streets are commonly the place where they perform their duties. Decedent was charged with patrolling the streets to report violations of law, and he spent most of his working time in that endeavor. In this sense, the streets of the city were his place of work. We discern no rational reason why it cannot be said that the city owes a duty as an employer to maintain safe streets for the benefit of the police officers who are required to work there. The fact that it owes the same duty to the public does not detract from this conclusion. The situation is roughly analogous to a public building in which government employees work. The government's obligation to provide safe premises flows both to the public and the employees working in the building, but this does not mean that it has assumed a separate role toward its employees as a landowner which renders it liable to civil suit.

No case has extended the dual capacity doctrine to encompass the instant circumstances. *Freese* v. *Consolidated Rail Corp.* (1983) 4 Ohio St.3d 5 [445

N.E.2d 1110], is to the contrary. There a motorcycle policeman sought to hold his employer, the City of Cincinnati, liable for injuries sustained when his motorcycle overturned after a wheel fell into a hole near a railroad track. He claimed that the city was negligent in its maintenance of the roadway. The court upheld a summary judgment in the city's favor, declining to apply the dual capacity doctrine. Plaintiffs attempt to distinguish this case on the basis of general language contained in *Bell* v. *Vangas, supra,* 30 Cal.3d 268, 276-277,[12] but their attempted distinction, as well as their remaining contentions, are based on the premise that the city's obligation to maintain safe streets was owed to decedent as a member of the general public rather than as an employee. Since we reject this premise, we need not further pursue their arguments.

As our courts have often observed, the workers' compensation system represents a balance between the advantage to the employer of immunity from liability at law and the advantage to the employee of swift and certain compensation. The employee for his part surrenders the right to a potentially larger recovery at common law for the negligence of his employer. (*Johns-Manville Products Corp.* v. *Superior Court, supra,* 27 Cal.3d 465, 474.) Acceptance of the principles advanced by plaintiffs would seriously interfere with this design. The survivors of many—perhaps most—public safety officers who die from work-related injuries—and they are defined broadly[13]—would have the right to sue the government for damages at common law, and at least in principle, all public employees whose duties required them to work on the streets and highways would also be entitled to sue for damages by alleging that they were injured by a defective condition of such premises.

We hold, therefore, that the "conditions of compensation" exist here, and that plaintiffs are barred by sections 3600 and 3601 from prosecuting this action against the city for its alleged negligence in maintaining the street where the accident occurred.

---

[12] The Ohio court reasoned that the dual capacity doctrine applies only if the employer "stepped out of his role as such, and had assumed another hat or cloak. If the facts would show the latter, the employer has accordingly assumed another capacity and also has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship." (445 N.E.2d at p. 1114.) Plaintiffs urge that the California test of dual capacity is not as stringent, since, according to *Bell,* it requires only an "additional concurrent duty" flowing from "a relationship that is distinct from that of employer-employee . . . ." (30 Cal.3d at p. 277.)

[13] See Government Code sections 21363, 21363.3, 21363.5 and 21363.6.

## CONCLUSION

The judgment of the Court of Appeal is reversed.[14]

Lucas, C. J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

---

[14]We also direct the Court of Appeal to dismiss plaintiffs' appeal as to Kaiser Industries Corporation, which was originally a defendant in this action. The trial court had granted a nonsuit as to Kaiser, plaintiffs appealed from the order, and the Court of Appeal affirmed. Plaintiffs did not petition for review of the Court of Appeal's action in this regard. Following our grant of review of the Court of Appeal's decision against the city, plaintiffs and Kaiser presented a stipulation for dismissal of appeal in which plaintiffs stipulated that the judgment in favor of Kaiser may be dismissed, that each party would bear its own costs, and that the remittitur could issue forthwith. However we were unable to grant this request since no appeal was pending before us between plaintiffs and Kaiser. We therefore denied the request to dismiss the appeal, but we noted the abandonment of the appeal as to Kaiser. Therefore we direct the Court of Appeal to dismiss plaintiffs' appeal as to Kaiser at the time it issues its remittitur to the trial court.