HOWARD v WHITE

Docket Nos. 96435, 96436. Decided October 31, 1994. On application by the defendant City of Detroit for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court. Rehearing denied *post*, 1218.

Kim Howard and Dennis Kitchen, employees of the City of Detroit, brought an action in the Wayne Circuit Court against the city and others, seeking damages for injuries sustained after they were involved in a motor vehicle accident while driving a city vehicle within the city limits on a job assignment, alleging that the accident was caused by a defective traffic signal. The court, William Leo Cahalan, J., granted summary disposition for the city on the basis of the exclusive remedy provision of the Worker's Compensation Disability Act. The Court of Appeals, WAHLS and BRENNAN, JJ. (MACKENZIE, P.J., dissenting), reversed, citing the dual-capacity doctrine, finding that the city clearly had a second persona completely independent from and unrelated to its status as an employer and that the employer-employee relationship was a mere coincidence, entirely unrelated to the plaintiffs' cause of action (Docket Nos. 127980, 128050). The city seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

The dual-capacity doctrine is not applicable to the facts of this case.

In some circumstances an employee may bring a civil action against an employer for a work-related injury caused by the employer in a role other than employer. The dual-capacity doctrine is applicable only where the employer has a second identity that is completely distinct and removed from its status as employer. This is not an appropriate case for application of the doctrine. The plaintiffs allege that they were driving a city vehicle within the city while on a job assignment. While there is some uncertainty regarding exactly where they were going at the time of the accident, there is no doubt that travel in city vehicles within the city was an ordinary part of their job.

Reversed.

Justice LEVIN, dissenting, stated that the duty imposed on the City of Detroit by § 2 of the governmental tort liability act, to keep any highway under its jurisdiction in reasonable repair and in condition reasonably safe and fit for travel, does not depend on whether the user of the highway is an employee of the City of Detroit. The duty is imposed for the benefit of all users of the highway, without regard to whether they work for the city. Therefore, it is at least arguable that, with regard to its duty under § 2, the city has a second identity that is completely distinct and removed from its status as employer within the meaning of *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 653 (1984). Recovery is not sought in this case for a failure of the city to maintain a safe place to work, but rather for injury claimed to have been caused by the city's failure to discharge a duty imposed on it by statute. A duty imposed on the city for the benefit of all users of the highway, without regard to whether they are employees of the city, is imposed on it in a role other than employer.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In this case, factual and legal assessment is required; peremptory disposition is not appropriate.

195 Mich App 590; 491 NW2d 625 (1992) reversed.

*Donald M. Fulkerson* for the plaintiff.

*Donald Pailen,* Corporation Counsel, *Leona L. Lloyd,* Principal Assistant Corporation Counsel, and *Sharon D. Blackmon,* Assistant Corporation Counsel, for the defendant.

PER CURIAM. While employed by the City of Detroit, and while driving one of its vehicles within the city limits, the plaintiffs were involved in a motor vehicle accident caused by a defective traffic signal. They sued the city, but the circuit court awarded summary disposition against them on the ground that worker's compensation was their exclusive remedy. The Court of Appeals reversed, citing the "dual capacity" doctrine.

This case was properly decided by the circuit

court. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

This case arises from an accident that occurred at the corner of Lyndon and Hubbell in the City of Detroit, late in the morning of August 2, 1988.[1] A man named Eddie W. White was driving east on Lyndon in an automobile owned by Martha A. White. Meantime, plaintiff Kim Howard was driving a City of Detroit truck[2] north on Hubbell. Plaintiff Dennis Kitchen was her passenger.[3] Ms. Howard and Mr. Kitchen were on a job assignment.[4]

Traffic passing through the intersection of Lyndon and Hubbell was controlled by a traffic signal. It displayed a flashing yellow light for Hubbell traffic, and it was supposed to display a flashing red light for traffic on Lyndon. Unfortunately, the traffic light was not working properly, and some-

[1] This case has not been tried. At this stage of the proceedings, we accept as true the allegations found in the plaintiffs' complaint.

[2] In the plaintiffs' complaint, the vehicle was described as a "van." At the hearing on the city's motion for summary disposition, plaintiffs' counsel said that the plaintiffs were driving "a City garbage truck." In this Court, the plaintiffs state that they "normally worked as garbage collectors, but on August 2, 1988, were installing signs at a specific site in the City."

[3] In pleadings to this Court, the city states that Mr. Howard was driving.

[4] The plaintiffs' complaint contains the unadorned allegation that they were "on a job assignment" at the time of the events giving rise to this litigation. Later, during discovery, they asserted that the accident had occurred during a lunch break, and so was not within the course of employment. *McClure v General Motors Corp (On Rehearing)*, 408 Mich 191, 209, 229-230; 289 NW2d 631 (1980). In the circumstances of this case, it is not clear whether or how to apply the rule of *McClure*. Since this case concerns a motion for summary disposition granted under MCR 2.116(C)(8), we base our decision on facts alleged in the plaintiffs' complaint and therefore accept that this accident occurred while they were in the course of their employment.

times displayed a flashing green light for traffic on Lyndon.[5]

With the light malfunctioning, Mr. White drove his car through the intersection, striking Ms. Howard's truck on the driver's door. Both Ms. Howard and Mr. Kitchen were seriously injured.

The plaintiffs sued Mr. White, Ms. White, and the City of Detroit. In response, the city filed a motion for summary disposition, arguing that worker's compensation was the plaintiffs' exclusive remedy with respect to the city. Following a hearing, the circuit court granted the motion, citing MCR 2.116(C)(8) and relying upon "the exclusive remedy provision of the Workers' Compensation Disability Act . . . ."[6]

The plaintiffs filed separate appeals, which the Court of Appeals consolidated. It then reversed the summary disposition, over the dissent of Judge MACKENZIE. 195 Mich App 590; 491 NW2d 625 (1992).

After the city moved unsuccessfully for rehearing in the Court of Appeals, it filed an application for leave to appeal to this Court.

II

The dual-capacity doctrine is recognized in Michigan. In some circumstances, an employee may bring a civil action against the employer for a work-related injury caused by the employer *in a role other than employer.*

A hypothetical application of the doctrine arises where an employee of an automobile manufactur-

---

[5] The circuit file contains papers submitted by the plaintiffs to demonstrate that various city departments had been notified repeatedly of the problem, and that there had been several accidents at the intersection.

[6] MCL 418.131; MSA 17.237(131).

ing company is struck and injured away from the
work site by a defective automobile manufactured
by the employer. Welch, Worker's Compensation
in Michigan: Law & Practice (rev ed), p 5-2. An
actual application arose when a city employee was
treated at a municipal hospital for a work-related
injury, and later sought to bring an action against
other city employees for medical malpractice.
*Fletcher v Harafajee,* 100 Mich App 440; 299
NW2d 53 (1980).

A leading commentator cautions against "loose-
ness" and "overextension" in the application of
the doctrine. 2A Larson, Workmen's Compensa-
tion, § 72.81(a), p 14-290.89. The writer continues:

> Since the term "dual capacity" has proved to be
> subject to such misapplication and abuse, the only
> effective remedy is to jettison it altogether, and
> substitute the term "dual persona doctrine." The
> choice of the term "persona" is not the result of
> any predilection for elegant Latinisms for their
> own sake; it is dictated by the literal language of
> the typical third-party statute, which usually de-
> fines a third party, in the first instance, as "a
> *person* other than the employer."[7] This is quite
> different from "a person acting in a capacity other
> than that of employer." The question is not one of
> activity, or relationship—it is one of identity. The
> Tennessee Supreme Court, brushing aside all the
> fictitious sophistry of "dual capacity," nailed down
> this point with breathtaking simplicity:
> "The employer is the employer; not some person
> other than the employer. It is as simple as that."
> [*Id.,* p 14-290.91, quoting *McAlister v Methodist
> Hosp of Memphis,* 550 SW2d 240, 246 (Tenn,
> 1977).]

Likewise, this Court has cautioned that "the
doctrine is applicable only in those situations in

---

[7] See, e.g., MCL 418.827(1); MSA 17.237(827)(1).

which "the employer has a second identity which is completely distinct and removed from his status as employer." *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 653; 364 NW2d 670 (1984).

III

In the present case, the Court of Appeals found that "[t]he city clearly had a second persona completely independent from and unrelated to its status as an employer," and that "the employer-employee relationship in this case was a mere coincidence and was entirely unrelated to plaintiffs' cause of action." 195 Mich App 593.

Dissenting, Judge MACKENZIE concluded that the "Plaintiffs' cause of action is tantamount to an assertion that the city provided them with an unsafe work environment . . . ." She further rejected the notion that there was only a "coincidental" relationship between the plaintiffs' cause of action and the city's status as an employer. "The reason plaintiffs were on the road at the time they were injured was to perform their job as refuse collectors. Their work was in no sense 'coincidental' to their claim." 195 Mich App 595.

We agree with the dissent that this is not an appropriate case for application of the dual-capacity doctrine.

A claim similar to that of the current plaintiffs was rejected by this Court in *Bross v Detroit,* 262 Mich 447, 450; 247 NW 714 (1933), where a police officer attempted to bring suit for injuries suffered in a collision with a city-owned streetcar. Recent decisions are in accord.

For example, in *Holody v Detroit,* 117 Mich App 76; 323 NW2d 599 (1982), a police officer brought an action against the city and four firefighters after one of them drove a truck through a stop

sign and collided with the officer's police car. Summary disposition[8] in favor of the defendants was affirmed.

In *Cassani v Detroit,* 156 Mich App 573; 402 NW2d 1 (1985), an officer was severely injured by a wire cable strung between two metal poles on a city-owned lot, across which the officer was pursuing an escaping felon. The Court of Appeals directed that summary disposition be entered for the city, rejecting a claim that its role as landowner gave it a second persona.

The same result was reached in *Benson v Dep't of Management & Budget,* 168 Mich App 302; 424 NW2d 40 (1988), where a state employee slipped and fell in the state parking lot at work. Like Officers Holody and Cassani, Ms. Benson was unable to persuade the Court of Appeals that her employer had assumed "a second identity which is completely distinct and removed from his status as employer." *Benson* at 308; *Wells* at 653.

Decisions from other jurisdictions lead to the same result. While each state has its own statute, history, and legal culture, the published decisions consistently deny relief to government employees who, while traveling within the employer's jurisdiction in the course of employment, are injured by unsafe road conditions or are struck by government vehicles driven by other persons in the same employ. *Thompson v Lewis Co,* 92 Wash 2d 204; 595 P2d 541 (1979) (a county road employee was injured in an accident caused by the county's failure to maintain the roadway); *Spencer v Seattle,* 104 Wash 2d 30; 700 P2d 742 (1985) (the city's assistant civil engineer was struck by a city truck while stepping into a crosswalk in the course of

---

[8] Where older cases speak of "summary judgment" or "accelerated judgment," we will instead use the current phrase. MCR 2.116.

employment);[9] *Sutmire v Andrews,* 108 Pa Comm 90; 529 A2d 68 (1987) (a police officer was injured in a collision caused by an icy roadway); *Jones v Kaiser Industries Corp,* 43 Cal 3d 552; 237 Cal Rptr 568; 737 P2d 771 (1987) (a police officer was killed in an accident at a dangerous intersection);[10] *Murray v City of New York,* 43 NY2d 400; 401 NYS2d 773; 372 NE2d 560 (1977) (a city planning

---

[9] Independent research disclosed that every jurisdiction presented with the issue has rejected the dual capacity doctrine in cases involving an action by a state, county, or city employee against the government, which alleged negligence by another government department. *State v Purdy,* 601 P2d 258 (Alas, 1979); *Walker v City & Cy of San Francisco,* 97 Cal App 2d 901; 219 P2d 487 (1950); *State v Coffman,* 446 NE2d 611 (Ind App, 1983); *Osborne v Commonwealth,* 353 SW2d 373 (Ky App, 1962); *Wright v Moore,* 380 So 2d 172 (La App, 1979), cert den 382 So 2d 164 (La, 1980); *Bross v Detroit,* 262 Mich 447; 247 NW 714 (1933); *Holody v Detroit,* 117 Mich App 76; 323 NW2d 599 (1982); *De Giuseppe v New York,* 188 Misc 897; 66 NYS2d 866 (1946), aff'd 273 AD 1010; 79 NYS2d 163 (1948); *Linzee v State,* 122 Misc 2d 207; 470 NYS2d 97 (1983); *Freese v Consolidated Rail Corp,* 4 Ohio St 3d 5; 445 NE2d 1110 (1983); *Berger v UGI Corp,* 285 Pa Super 374; 427 A2d 1161 (1981). (One Wisconsin case held the State was liable to an employee, national guardsman, but the court found the State had a separate duty under the statutes to act as an insurer and to pay judgments of national guardsmen performing in good faith. *Mazurek v Skaar,* 60 Wis 2d 420; 210 NW2d 691 [1973].) [*Spencer* at 33-34.]

[10] [I]t cannot be denied that as to police officers, the streets are commonly the place where they perform their duties. Decedent was charged with patrolling the streets to report violations of law, and he spent most of his working time in that endeavor. In this sense, the streets of the city were his place of work. We discern no rational reason why it cannot be said that the city owes a duty as an employer to maintain safe streets for the benefit of the police officers who are required to work there. The fact that it owes the same duty to the public does not detract from this conclusion. The situation is roughly analogous to a public building in which government employees work. The government's obligation to provide safe premises flows both to the public and the employees working in the building, but this does not mean that it has assumed a separate role toward its employees as a landowner which renders it liable to civil suit. [*Jones* at 561.]

employee was fatally injured when struck by a police car while walking in the city as he was making a feasibility study regarding a possible port).[11]

Perhaps the most frequently cited of these cases is *Freese v Consolidated Rail Corp,* 4 Ohio St 3d 5; 445 NE2d 1110 (1983). There, a motorcycle officer for the City of Cincinnati was injured while crossing railroad tracks within the city. He sued the railroad and the city on the ground that the crossing and the street were not properly maintained. The Ohio Supreme Court denied relief, saying:

> Here, the facts indisputably are that at the time of the accident the appellant was performing his duties as a motorcycle officer which required him to travel the city's streets in the regular course of his employment. At all times relevant herein, the city was the appellant's employer and there never arose another independent relationship between the two. However, the appellant claims that by virtue of [Ohio Revised Code Annotated] 723.01, which statute requires the city to keep its streets open, in repair, and free from nuisance, the city owes him an unrelated and independent duty. This assertion is, in the main, an allegation that the city employer as owner of the "premises" upon which the appellant as a police officer works, has an obligation toward him to maintain a safe place to work.
>
> We must reject this latter proposition. First, although R.C. 723.01 imposes a duty upon the city to keep the streets clear and free from nuisance for the benefit of the general public, the statute does not generate obligations to this employee independent of and unrelated to the city's obligations as an employer.

[11] *Murray* is largely devoted to an issue regarding conformance of pleadings to proofs. However, the facts and the disposition signal the agreement of the New York Court of Appeals regarding the proper outcome in a case such as this.

Further, an action brought against the city based upon its negligence in maintaining its streets is exactly the nature of action precluded by the exclusivity provisions of Section 35, Article II of the Ohio Constitution, as implemented by R.C. 4123.74 of the Workers' Compensation Act. Thus, as stated in *Kottis v United States Steel Corp* [543 F2d 22, 26 (CA 7, 1976)]:

". . . Failure of the employer to provide a safe place to work is the cause, or can plausibly be alleged to be the cause, of a substantial proportion of industrial accidents. It was one of the most important grounds for master-servant actions at common law . . . which the workmen's compensation remedy was designed to replace. Allowing a remedy in addition to workmen's compensation for such cases would make substantial, if not devastating, inroads on the Indiana workmen's compensation scheme."

It seems to be rather universally held that a complying employer is not obligated to his employee as the owner or occupier of land, whether the cause of action is based on the common law obligations of landowners or on safe-place-to-work statutes or so-called structural work acts. . . .

Similarly, it would appear that many courts across the country have rejected the dual-capacity claims against governmental entities, when the claims rely upon the theory of safe place to work, or upon the basis that the claimant is an employee of one department of the employer government and that the injury had been occasioned by an employee of another department of that governmental entity. . . .

We find the exclusivity of the workers' compensation remedy as reached in these cited cases to be proper and applicable to the instant case. *Otherwise, injured municipal employees, such as firemen, policemen, sanitation workers, who regularly work and travel upon the public streets, highways and sidewalks of our cities would be legally permitted to circumvent the exclusivity provisions of the Workers' Compensation Act* and both obtain

the benefits of the Act and recover in tort based upon allegations of negligence of the municipal employer. [*Freese* at 11-12. Emphasis supplied; citations omitted.]

The present case is similar. In their complaint, the plaintiffs allege that they were driving a city vehicle within the City of Detroit while on a job assignment. While there is some uncertainty with regard to exactly where they were going at the time of the accident, there is no doubt that travel in city vehicles within the city (to, from, and during job assignments) was an ordinary part of their job.[12]

Neither the plaintiffs' research nor our own has located an appellate decision in which a municipal employee who travels about the city as part of the job has invoked successfully the dual-capacity doctrine to allow recovery against the employer for defective road conditions.[13] We are likewise persuaded that the dual-capacity doctrine is inapplicable to the facts of this case as alleged in the plaintiffs' complaint.

We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

LEVIN, J. (*dissenting*). I would deny leave to

---

[12] As stated earlier, summary disposition was granted under MCR 2.116(C)(8). Therefore, our review ordinarily would be based on the facts alleged in the plaintiffs' complaint, which does not state their occupation. However, as noted in n 2, the plaintiffs describe themselves to this Court as employees of the City of Detroit's Department of Public Works, who "normally worked as garbage collectors, but on August 2, 1988, were installing signs at a specific site in the City."

[13] The plaintiffs direct our attention to *Wright v Moore*, n 9 *supra*, p 174. However, we find in that decision no support for their position.

appeal, and dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the jurisprudentially significant issue, decided without oral argument or plenary consideration in the majority opinion.

I

While the majority prefers the assessment of the circuit judge, who granted the defendant summary disposition, and the reasoning of the dissenting judge in the Court of Appeals, the determination of the majority of the Court of Appeals was not so devoid of reason as to justify peremptory reversal. The majority's decision to peremptorily reverse the decision of the Court of Appeals belittles its efforts, in the disposition of this case, as reflected in its carefully written published opinion,[1] and deprives Kim Howard and Dennis Kitchen and their counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Because the circuit judge granted summary disposition pursuant to MCR 2.116(C)(8), failure "to state a claim on which relief can be granted," the motion was decided on the basis of the pleadings[2] without factual development, and thus this is, in a sense, an interlocutory appeal.

Today's peremptory order reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is

[1] 195 Mich App 590; 491 NW2d 625 (1992).

[2] The court rule provides that "[o]nly the pleadings may be considered when the motion is based on subrule (C)(8) or (9)." MCR 2.116(G)(5).

an opportunity to educate the justices concerning the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Also lost, when this Court acts without plenary consideration, is the opportunity for conference discussion after oral argument, and further conference discussion after an opinion has been prepared and circulated.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[3] In the instant case, factual and legal

---

[3] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA,* 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People*

assessment is required. Peremptory disposition is not appropriate.

## II

Kim Howard and Dennis Kitchen, employees of the City of Detroit, commenced this action against Eddie W. and Martha Ann White and the City of Detroit, seeking damages for injuries suffered when the city-owned vehicle in which they were riding collided with the White vehicle. Howard and Kitchen claimed that the collision was caused in part by the failure of the city to maintair a traffic signal at the intersection where the collision occurred in reasonable repair and in condition reasonably safe and fit for travel as required by § 2 of the governmental tort liability act.[4]

The circuit judge granted the city summary disposition pursuant to MCR 2.116(C)(8) on the basis of the exclusive remedy provision of the Worker's Disability Compensation Act.[5] The Court of Appeals reversed, stating that "[t]he dual capacity doctrine is an exception to the exclusive remedy provision and allows an employee to state a cause of action in tort against his employer where

---

*v Waleed,* 441 Mich 902, 902-903 (1992) (Levin, J., dissenting); *People v Hardison,* 441 Mich 913, 914-916 (1993) (Levin, J., dissenting); *People v Justice,* 441 Mich 916, 917-919 (1993) (Levin, J., dissenting); *People v LaClear,* 442 Mich 867, 867-871 (1993) (Levin, J., dissenting); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1, 16-18; 521 NW2d 4⌣⌣ (1994) (Levin, J., dissenting); *Weisgerber v Ann Arbor Center for the Family,* 447 Mich 963, 964-969 (1994) (Levin, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

[4] MCL 691.1402; MSA 3.996(102).

[5] MCL 418.131; MSA 17.237(131).

the employer occupies a second capacity that confers upon it obligations independent of those imposed on it as an employer."[6] The Court of Appeals said that the city's duty under § 2 was "totally unrelated to the obligations the city had as plaintiffs' employer."[7]

The duty imposed on the City of Detroit by § 2 of the governmental tort liability act, "to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel," does not depend on whether the user of the highway is an employee of the City of Detroit. The duty is imposed for the benefit of all users of the highway, without regard to whether they work for the city. It is, therefore, at least arguable—with the consequence that peremptory disposition is not appropriate—that, with regard to its duty under § 2, "the employer [the city] has a second identity which is completely distinct and removed from [its] status as employer" within the meaning of *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 653; 364 NW2d 670 (1984).

The majority states, and I agree: "The dual-capacity doctrine is recognized in Michigan. In some circumstances, an employee may bring a civil action against the employer for a work-related injury caused by the employer *in a role other than employer.*" (Emphasis in original.)[8]

Recovery is not here sought for a failure of the city to maintain a safe place to work, but rather for injury claimed to have been caused by the city's failure to discharge a duty imposed on it by statute to keep a highway in reasonable repair, and in condition reasonably safe and fit for travel for all users of the highway. A duty imposed on

---

[6] 195 Mich App 592.

[7] *Id.,* p 593.

[8] *Ante,* p 398.

the city for the benefit of all users of the highway, without regard to whether they are employees of the city, is imposed on it "in a role other than employer."